465 A.2d 1007

**Richard GROSSMAN, Appellant,**

v.

**COMMISSIONER OF POLICE.**

Superior Court of Pennsylvania.

Argued March 24, 1983.

Filed July 29, 1983.

Reargument Denied Oct. 7, 1983.

Jacob S. Richman, Philadelphia, for appellant.

Douglas B. Fox, Assistant District Attorney, Philadelphia, for appellee.

Before HESTER, JOHNSON and POPOVICH, JJ.

HESTER, Judge:

This is an appeal from the Order of March 7, 1980, denying appellant's Petition for Reconsideration of Application for Return of Money.

The facts of the case are as follows:

On August 7, 1978, the Narcotics Unit of the Philadelphia Police Department, pursuant to a search warrant, searched the residence of Rochelle Spector, appellant's girlfriend, at 384 Tomlinson Place, Philadelphia, Pennsylvania. Appel-

lant was present with Rochelle Spector during the search and both were arrested and charged with various violations of the drug laws. Among the items seized by the police were $111,450.00 in cash, seven (7) pounds of marijuana and thirty-four (34) slips of paper containing writings and numerals.

Appellant was found not guilty of the various drug charges. He then petitioned the lower court for the return of the $111,450.00.

On March 21, 1979, a hearing was held regarding appellant's application. The testimony was as follows:

Sergeant Thomas Valenti testified that he had been assigned to the Narcotics Unit of the Philadelphia Police Department since October 28, 1970. He received formal training in drug trafficking and had conducted or supervised numerous investigations into marijuana trafficking. After reviewing the slips from this case, he testified, "These are the records, these are the records, from my experience, of someone doing multi-bundles (one bundle-25 pounds)". Valenti stated that he has seen such records kept in many drug cases. At the top of many of the slips was the word "Red" which referred to a type of marijuana. There were indications on the slips as to the amounts of money which had been paid. Many of the slips had names and numbers associated with them, such as "Ed; Jeff, 1 at 4–10, Mik, 2, 4–25." There was a line through the "4–25" and the notation "paid". There were notations such as "Jeff—1.410 paid, PR would be $105.00." The records were kept in such detail as to reflect small amounts (quarter ounces) for the appellant's personal use.

Sergeant Valenti testified that he had never found anyone who possessed seven (7) pounds of marijuana for personal use. He estimated that the street value of 591 pounds of marijuana (the value of sale indicated on the slips) sold in ounce quantities, was $472,000.00, and if that amount were sold in pound quantities, it would yield approximately $236,-000.00. He also stated that if one purchased 591 pounds of baled marijuana, the cost would be $118,000.00.

Bernard Hall, an investigative accountant who had been employed by the Internal Revenue Service for approximately twenty-five (25) years, stated that he analyzed the slips. It was his opinion that they were records of a marijuana sales operation. His analysis, made from an examination of the slips, as well as a reconstruction of the slips missing from sequence, indicated sales of approximately 3,125 pounds of marijuana at a selling price of $1,210,938.00. The slips contained figures such as "5 at 400" or "5 at 380". These indicated the quantity of marijuana sold and the selling price. Also, Hall stated the figures on the slips were obviously a running account of the balance owed on a particular sale by the person to whom the marijuana was sold on credit. However, the records were not complete and the 3,125 figure was based on a projection of the reconstructed missing records. Excluding all estimates and projections, Hall stated that records indicated sales of 591 pounds of marijuana at a cost of $234,000.00. Hall further stated that the slips he examined indicate the balances disclosed thereon were outstanding; that in his experience such records were destroyed as soon as the amount due was paid. Hall also indicated that persons dealing in large amounts of marijuana have a large working cash fund.

Appellant raises two issues on appeal. These are: 1) whether the evidence is sufficient to establish that the $111,450.00 is derivative contraband; and 2) whether there are any appealable Orders prior to the Order of denial of appellant's Petition for Reconsideration.

First, we will consider whether the appeal was timely taken. On March 21, 1979, following a hearing in the court below on appellant's Application for the Return of Money, Judge Kremer, on the proposed Order submitted by appellant, crossed out appellant's Order and marked "3/21/79 Room 784, Petition Denied, By the Court, Kremer, J." This Order was duly docketed. Appellant did not file a Petition for Reconsideration until November 14, 1979. This petition was subsequently denied on March 7, 1980, and appellant took this appeal on April 7, 1980.

■ Appellant cites three reasons for not filing a timely appeal from the March 21, 1979 Order. First, appellant contends that this Order violated Pa.R.A.P. 301(b), in that the Order is to be "set forth on a separate document." We cannot agree with appellant's contention; the Order is set forth on a separate document, that document being the Order supplied by appellant himself.

Secondly, appellant alleges that the March 21st Order was not appealable in that it failed to comply with Pa.R. Crim.P. 324(b), by not setting forth a finding to the effect that the $111,450.00 was contraband, nor that the fund was to be forfeited. Pa.R.Crim.P. 324 states as follows:

"(a) A person aggrieved by a search and seizure, whether or not executed pursuant to a warrant, may move for the return of the property on the ground that he is entitled to lawful possession thereof. Such motion shall be filed in the Court of Common Pleas for the judicial district in which the property was seized.

(b) The judge hearing such motion shall receive evidence on any issue of fact necessary to the decision thereon. If the motion is granted, the property shall be restored unless the court determines that such property is contraband, in which case the court may order the property to be forfeited.

(c) A motion to suppress evidence under Rule 323 may be joined with a motion under this rule."

In the present case, immediately before formulating the Order, the lower court stated as follows:

"I am fully satisfied from the evidence that the Commonwealth has proved that the $111,000 is derivative contraband. At the same time I am fully satisfied from the evidence that the defendant has failed, completely, to prove or show, yielding no burden upon him, but he has failed to show to the satisfaction of this Court in any way, with the testimony given, that he is the real owner of the $111,000. Approached from either one of those directions, I am denying the petition."

■ Clearly, the court determined that the $111,450.00 was contraband and thus the property was to be forfeited. The court found as a fact that appellant had no interest in the fund. Moreover, a final appealable order is one which ends the litigation or disposes of the entire case. *Piltzer v. Independence Federal Savings and Loan Association of Philadelphia*, 456 Pa. 402, 319 A.2d 677 (1974). An order will also be treated as final if the practical consequence is, in effect, to put an appellant out of court, or if it precludes an appellant from presenting the merits of the claim to the lower court. *Pugar v. Greco*, 483 Pa. 68, 394 A.2d 542 (1978). In the present case, the March 21, 1979, Order was an appealable order and thus the dictates of Pa.R.A.P. 903(a) apply.[1]

■ Appellant finally contends that the March 21, 1979, Order was not appealable since the docket is devoid of any notation of notice of entry of this order to the parties as dictated by Pa.R.Civ.P. 236(b) and Pa.R.A.P. 108(b). Also, appellant cites *Yeaple v. Yeaple*, 485 Pa. 399, 402 A.2d 1022 (1979), and *Commonwealth v. Landy*, 240 Pa.Super. 458, 362 A.2d 999 (1977), in support of his proposition. However, we do not view this as being a civil order in that this proceeding is clearly governed by the Pennsylvania Rules of Criminal Procedure. Pa.R.Crim.P. 324 creates the right and supplies the procedure for a Motion for Return of Property. Further, appellant's reliance on *Commonwealth v. Landy, supra*, is misplaced. In *Landy, supra*, we held that forfeiture proceedings, such as the present one under § 780–128 of the Controlled Substance, Drug, Device and Cosmetic Act, are civil as to their burden of proof, but quasi-criminal in character. However, in matters of procedure, the Rules of Criminal Procedure clearly govern and thus the order issued in this action is a criminal order. *See* Pa.R.Crim.P. 324.

1. Pa.R.A.P. 903(a) is as follows:
   "(a) General rule. Except as otherwise prescribed by this rule, the notice of appeal required by Rule 902 (manner of taking appeal) shall be filed within 30 days after the entry of the order from which the appeal is taken."

■ Thus, no notation of notice of entry as to this Order is required on the docket. *See* Pa.R.A.P. 108(a)(1). Therefore, appellant's notice of appeal is untimely. *See* Pa.R. A.P. 903(a).

The appeal is hereby quashed.

JOHNSON, J., concurs in the result.