543 A.2d 142

**Harry J. WEIST**

v.

**ATLANTIC RICHFIELD COMPANY, Appellant.**

Superior Court of Pennsylvania.

Argued Nov. 19, 1987.

Filed June 6, 1988.

406

Lori A. Kradzinski, Philadelphia, for appellant.

John W. Craynock, Philadelphia, for appellee.

Before CAVANAUGH, McEWEN and TAMILIA, JJ.

TAMILIA, Judge:

This appeal concerns a trial court order imposing sanctions against appellant Atlantic Richfield Company ("ARCO"). The action was commenced on December 10, 1985 by appellee filing a complaint in assumpsit averring ARCO breached its contract with appellee by charging him $18,203 in alleged royalty deficiencies without justification pursuant to an am/pm Mini Market agreement between the parties. In its answer, filed February 13, 1986, ARCO denied any overcharge and averred it was entitled to the money for deficiencies during the auditing period. Arco also raised a number of affirmative defenses in new matter.

On September 4, 1986, appellee noticed the deposition of Arthur Goldstein, a "managing agent" of ARCO.[1] In re-

---

1. There is some dispute as to whether or not Goldstein is a "managing agent" of ARCO or merely an employee or "other person" under Pa.R.C.P. 4007.1(e), dealing with the proper procedure for deposition

sponse to this notice, ARCO filed a motion for protective Order requesting the deposition of Goldstein, who worked in a California office of ARCO, be taken by telephone, written interrogatories, or by oral deposition in either California or Pennsylvania at appellee's expense. After argument, by a November 3, 1986 Order, the trial court effectively denied ARCO's motion by ordering the deposition of Goldstein in Philadelphia on January 12, 1987, the day before the scheduled arbitration in the case, and by allowing appellee to file interrogatories within twenty days and ARCO to file answers within twenty days thereafter.[2]

On or about November 25, 1986, appellee forwarded interrogatories to counsel for ARCO. Then on January 7, 1987, appellee filed a motion for sanctions averring that ARCO had failed to respond to his interrogatories sent approximately forty-three days prior to the sanctions motion and also averred ARCO had informed appellee it would not produce Goldstein for deposition on January 12, 1987, as ordered by the court. In response to appellee's motion for sanctions, the trial court entered a January 9, 1987 Order precluding ARCO from calling any witnesses at the arbitration or trial.[3] The arbitration board found against ARCO in

by oral examination. The trial court did refer to Goldstein as a managing agent (Slip Op., Doty J., 5/27/87, p. 2).

**2.** The November 3, 1986 Order reads as follows:

ORDER

AND NOW, this 3 day of Nov., 1986, upon consideration of the Motion for Entry of Protective Order Relating to Deposition of Arthur Goldstein, it is hereby ORDERED that the Deposition of said Mr. Goldstein which has been noticed by Plaintiff's counsel for October 10, 1986 in Philadelphia, Pennsylvania shall be held on January 12, 1987 and the arbitration January 13, 1987 at 2:30 p.m. Plaintiff may file interrogatories within 20 days hereof and defendant will answer within 20 days thereafter.

**3.** The January 9, 1987 Order reads as follows:

ORDER

AND NOW, this 9 day of Jan., 1987, upon consideration of Plaintiff's Motion for Sanctions, it is hereby ORDERED and DECREED that ARCO is precluded from calling any witnesses at the arbitration or trial whatsoever in support of its claim to entitlement to the Eighteen Thousand Two Hundred Three ($18,203.00) Dollars

the amount of $20,418.78 on January 13, 1987, which award was filed and docketed on January 15, 1987, and appealed by ARCO on February 13, 1987 to the Court of Common Pleas of Philadelphia County. The trial court's January 9, 1987 sanction Order was not entered on the trial court's docket until January 27, 1987 and ARCO brought this timely appeal of that Order on February 26, 1987.[4]

As a preliminary matter, we conclude that the sanction Order of January 9, 1987 is a final Order under Pa.R.A.P. 341 and that our jurisdiction lies under 42 Pa.C.S. § 742. "An order will also be treated as final if the practical consequence is, in effect, to put an appellant out of court, or if it precludes an appellant from presenting the merits of the claim to the lower court." *Grossman v. Commissioner of Police*, 318 Pa.Super. 584, 589, 465 A.2d 1007, 1010 (1983) (citing *Pugar v. Greco*, 483 Pa. 68, 394 A.2d 542 (1978)); *Foulke v. Lavelle*, 308 Pa.Super. 131, 454 A.2d 56 (1982). By preventing ARCO from presenting witnesses at arbitration or at trial the sanction Order effectively precluded ARCO from presenting the merits of its claims to the $18,203 below. "An order does not put a party 'out of court' unless it precludes proof of facts at trial, which if determined in favor of the pleader, would provide him with a complete defense to the action." *Zarnecki v. Shepegi*, 367 Pa.Super. 230, 232, 532 A.2d 873, 874 (1987) (en banc) (citing *Posternack v. American Casualty Company of Reading*, 421 Pa. 21, 23-4, 218 A.2d 350 (1966)). The sanction Order puts ARCO "out of court" for all practical purposes because it precludes proof at trial of what might

paid to ARCO by Plaintiff, Harry Weist, pursuant to its demand for payment of alleged royalty deficiencies.

4. We note that ARCO failed to comply with Pa.R.A.P. 2115, requiring the text of the Order in question to be set forth verbatim immediately following the statement of jurisdiction. ARCO improperly set forth the trial court's November 3, 1986 Order disposing of ARCO's motion for entry of a protective Order, failing to mention the January 9, 1987 sanction Order from which its appeal is based (appellant's brief at v—vi).

be a complete defense to appellee's claim.[5]

ARCO raises six issues, which are interrelated, questioning the propriety, severity, and appropriateness of the sanction Order. ARCO claims no sanctions could be imposed because the November 3, 1986 Order disposing of ARCO's motion for a protective Order and directing ARCO to produce Goldstein for deposition was entered in contravention of the law because the non-party Goldstein was never served with a subpoena to appear at the deposition, which, ARCO argues, Pa.R.C.P. 4007.1 requires. ARCO also contends the sanctions imposed were too extreme and unjustified, and prematurely imposed prior to actual noncompliance with the November 3, 1986 Order requiring Goldstein be produced for deposition.

The sanction Order of the trial court is based upon Pa.R.C.P. 4019, which governs the imposition of sanctions for failure to make discovery. This rule provides in pertinent part as follows:

**Rule 4019. Sanctions**

(a)(1) The court may, on motion, make an appropriate order if

. . . .

(viii) a party or person otherwise *fails* to make discovery or *to obey an order of court respecting discovery.*

. . . .

(c) The court, when acting under subdivision (a) of this rule, may make

---

5. In *Bruno v. Elitzky*, 515 Pa. 47, 526 A.2d 781 (1987), the Supreme Court held a trial court sanction Order striking defendant's new matter is interlocutory in nature and not within one of Pa.R.A.P. 311(a)'s seven specified Orders from which an appeal as of right may be taken. We find *Bruno* inapposite to the instant appeal because here ARCO is precluded from presenting a defense to appellee's action, not simply from raising new matter claims. *See Zarnecki, supra* 367 Pa.Super. at 235, n. 1, 532 A.2d at 876, n. 1.

. . . .

> (2) an order ... prohibiting [the disobedient party] from introducing in evidence designated documents, things or *testimony*....

(Emphasis added.)

The imposition of specific sanctions under Rule 4019 for failure to obey a discovery Order is largely within the discretion of the trial court. *Pompa v. Hojnacki*, 445 Pa. 42, 281 A.2d 886 (1971); *Hoffman v. Memorial Osteopathic Hospital*, 342 Pa.Super. 375, 492 A.2d 1382 (1985); *Brunetti v. Southeastern Pennsylvania Transportation Authority*, 329 Pa.Super. 477, 478 A.2d 889 (1984). However, the exercise of judicial discretion in formulating an appropriate sanction Order requires the court to select a punishment which "fits the crime." *Brunetti, supra; Commercial Trading Company v. Milsan Mills, Inc.*, 327 Pa.Super. 407, 476 A.2d 16 (1984); *Gonzales v. Procaccio Brothers Trucking Company*, 268 Pa.Super. 245, 407 A.2d 1338 (1979).

■ In its brief, ARCO cites *Griffin v. Tedesco*, 355 Pa.Super. 475, 513 A.2d 1020 (1986), for the contention that before the trial court can issue sanctions it must first enter an Order "compelling compliance" with discovery and that in this case, the trial court erred in not imposing such an Order (appellant's brief at 15–16). We find ARCO has misconstrued both the factual circumstances of this case and *Griffin*. In *Griffin, supra*, 355 Pa.Superior Ct. at 481, 513 A.2d at 1023, we stated:

> We recognize that Rule 4019 does not require the imposition of an order compelling discovery as a prerequisite to the trial court's authority to impose an appropriate sanction. As stated in the explanatory note to Rule 4019, 'Subdivision (a)(viii) is a blanket authorization to the court to enter a sanction order *whenever there is a failure to make discovery or to obey an order of the court.*' Explanatory Note to Rule 4019–1978 Civil Procedural Rules Committee (Emphasis added). *See Crance v. Sohanic*, 344 Pa.Super. 526, 496 A.2d 1230 (1985) (sanctions

may be imposed where there is a disregard of a discovery order *or an obligation stated in the rules of civil procedure* ) (emphasis added).

(Emphasis in original.) Neither Rule 4019 nor *Griffin* require an Order "compelling compliance" with discovery prior to imposition of sanctions by a trial court. *Linker v. Churnetski Transportation, Inc.,* 360 Pa.Super. 366, 520 A.2d 502 (1987). Although we did determine in *Griffin* that in view of the factual circumstances in that case, the trial court abused its discretion in not first directing discovery prior to imposition of sanctions, *Griffin* is inapposite to the present case. In *Griffin* when imposing sanctions the trial court was not acting on a motion for sanctions for noncompliance with an Order directing discovery but, instead, was acting on a motion for sanctions for noncompliance with the discovery rules themselves. Here, the trial court had already imposed an Order directing ARCO to produce Goldstein, i.e. the November 3, 1986 Order, and the January 9, 1987 Order sanctioned ARCO for noncompliance with the November Order. Therefore, due to the fact the trial court in the present matter had already issued an Order directing compliance, our decision in *Griffin* lends no weight to ARCO's argument; if anything, *Griffin* supports appellee's position that sanctions in the form of precluding a party from introducing testimony at trial can be proper when issued for failure to comply with a specific court Order.

■ Further, we find no merit in appellant's argument that because the November 3, 1986 Order was rendered in response to ARCO's motion for protective Order under Pa.R.C.P. 4012 it could not be the basis of sanctions. The last paragraph of Pa.R.C.P. 4012(a) provides that: "[i]f the motion for protective order is denied in whole or in part, the court may, on such terms and conditions as are just, order that any party or person provide or permit discovery." The trial court's action of directing ARCO to produce Goldstein for deposition was a proper response under the rule to ARCO's motion for protective Order.

412

■■■ Additionally, the lack of a subpoena is inconsequential in this case due to the valid court Order directing Goldstein to appear. In ruling on ARCO's motion for protective Order the trial court addressed this procedural deficiency and acted properly in issuing an Order correcting the oversight by directing Goldstein to appear. The November 3, 1986 Order recognized the potential expense a deposition in Pennsylvania would cause ARCO and for that reason ordered the deposition held the day before arbitration in an effort to minimize the cost to ARCO at the "expense" of appellee's preparation time being cut to a minimum. In connection with this, we find the fact that the imposition of sanctions was prior to actual noncompliance with the Order directing the production of Goldstein does not render the sanctions premature in this case as ARCO argues. ARCO notified appellee just days before the motion for sanctions and the date scheduled for the deposition of Goldstein that it would not produce Goldstein for deposition in direct contravention to the trial court's Order (Slip Op. at 2). Considering the trial court's prior effort of minimizing ARCO's costs by directing the deposition at the last possible moment, we believe ARCO should not benefit to the detriment of appellee by insisting that actual noncompliance was required before sanctions could be imposed when it clearly never intended to comply with the November 3, 1986 Order and stated that intention in advance.

The remaining question is whether or not the sanction of precluding ARCO from calling *any* witnesses at the arbitration or trial in support of its claims was proper.

ARCO was sanctioned for refusing to produce a witness whose deposition the appellee had noticed and the trial court had ordered. Goldstein was the only person appellee sought to depose. We find unsound ARCO's contention that its decision not to call Goldstein as a witness at arbitration or at trial forecloses any possibility of prejudice to appellee. Appellee maintains it noticed the deposition of Arthur Goldstein in order to ascertain, in detail, the basis in the audit and the franchise agreement from which ARCO

grounded its determination that appellee owed the $18,203. Appellee considered Goldstein to be the person who supervised the audit and actually interpreted the results of the audit against appellee, hence, explaining why he sought to depose only Goldstein. We find ARCO's answers to appellee's interrogatories bear this out. In response to appellee's interrogatories ARCO specifically answered that Arthur Goldstein was: the ARCO personnel who made the decision to audit appellee; the man to whom the public accounting firm conducting the 1984 audit reported its results; the only ARCO personnel who interpreted the results of the 1984 audit; and, the individual who prepared the am/pm franchise marketing audit results for ARCO.[6] Consequently, we conclude appellee's need to depose Goldstein critical in understanding why ARCO considered the amount in question properly chargeable, regardless of ARCO's determination not to call Goldstein in its own defense.

ARCO relies on our decisions in *Griffin, supra; Dunn v. Maislin Transport Limited* 310 Pa.Super. 321, 456 A.2d 632 (1983), and *Roman v. Pearlstein,* 329 Pa.Super. 392, 478 A.2d 845 (1984), in arguing that the sanctions imposed were excessive. Although we reversed sanctions precluding testimony, evidence, or a defense in all three cases, we find them distinguishable from the present circumstances. Both *Griffin* and *Dunn* dealt with sanctions imposed as a result of a failure to answer interrogatories during the regular course of discovery and not as a result of a failure to follow a previously entered discovery Order.

In *Dunn,* we found the interrogatories in question to be improper as a whole due to their excessive nature, including many unrelated and irrelevant questions which appeared to be "canned." We concluded in *Dunn* that the sanctioned

6. We recognize that ARCO finally filed answers to appellee's interrogatories on January 9, 1985, two days after appellee's motion for sanctions, and that the trial court was aware of this when imposing sanctions on that date; meaning the sanctions in question were only imposed for ARCO's refusal to produce Goldstein for deposition.

corporate party did attempt to respond to the interrogatories to the best of its ability and, therefore, the sanction of precluding any defense at trial was too severe. Here, we have had no attempt by ARCO to comply with the valid discovery Order and, as we have already stated, the ordered deposition of Goldstein was highly relevant and appropriate as demonstrated by ARCO's answers to interrogatories. Furthermore, we specifically limited our holding in *Dunn* by stating: "[i]n the instant appeal, it is useful to keep in mind that we are not dealing with the failure by the defendant to comply with any order of court respecting discovery." *Dunn, supra* 310 Pa.Super. at 328, 456 A.2d at 636.

Likewise, the factual circumstances in *Griffin* demonstrate it is not controlling in the present matter. In *Griffin* we found the sanctions imposed for failure to answer interrogatories too severe because the sanctioned party's counsel had "tendered but one refusal to comply with [the] discovery request," and concluded an Order compelling compliance would have been a more appropriate response. *Griffin, supra,* 355 Pa.Superior Ct. at 481, 513 A.2d at 1023. Here, ARCO repeatedly refused to produce Goldstein for deposition even after imposition of an Order requiring the same.

The case which lends the most support of ARCO's argument of excessiveness is *Roman, supra. Roman* dealt with sanctions precluding the defendant from introducing any evidence and examining any witnesses at trial and imposed a $500 counsel fee on the defendant. These sanctions were entered as a result of the defendant's failure to follow a trial court Order directing defendant to answer interrogatories and produce certain documents. We concluded the Order's imposition of counsel fees was proper, but found that the preclusion from introducing evidence and examining witnesses was too severe. We found that the discovery requested related not to liability but solely to damages and "[i]t was therefore disproportionate to punish

[the defendant] by, in effect, imposing liability on him despite the fact that his liability had not been proved, and the further fact that the discovery requested would not assist in proving it." *Roman, supra,* 329 Pa.Superior Ct. at 400, 478 A.2d at 849.

Here, Goldstein's testimony would have concerned both liability and damages. The failure to provide Goldstein for deposition greatly hampered appellee's entire case. We recognize that *Roman* demonstrates our adversion to severe sanctions which preclude a party's ability to present its case, but find that under these circumstances they are appropriate. ARCO willfully disregarded opposing counsel's requests and an Order of court. The 1978 Explanatory Note to Pa.R.C.P. 4019 allows us to consider this as a factor: "The court may impose sanctions even if the failure is not wilful. Wilfulness of course may be a factor in determining the extent of the sanction but it will not be an essential condition precedent to the power to impose a sanction." The essential relevance of the information sought coupled with the dramatic timing of ARCO's refusal to comply warrants the imposition of such sanctions. Both parties' substantive rights were involved. The trial court struck a proper balance between the need to move the case to a prompt disposition and the substantive rights of the parties. *Gonzales, supra.* To allow ARCO to go forward with testimony by its witnesses while denying appellee the right to depose Goldstein with the only sanction being the denial to ARCO the right to call Goldstein is ludicrous. ARCO doesn't need Goldstein and probably will be harmed by his testimony if he should appear. Such a sanction benefits ARCO. The only sanction that balances out the unavailability of Goldstein, a major witness for appellee, is to deny ARCO the right to call any witnesses.

Order affirmed.

CAVANAUGH, J., files a dissenting opinion.

CAVANAUGH, Judge, dissenting:

I respectfully dissent from the majority decision.

In *Bruno v. Elitzky*, 515 Pa. 47, 526 A.2d 781 (1987), our Supreme Court held that a sanction order striking the appellant's New Matter was interlocutory in nature. The court observed that "[t]here is no distinction ... between this particular order and other pre-trial orders on discovery or admissibility of evidence." *Id.*, 515 Pa. at 50, 526 A.2d at 782. It went on to observe that while Pa.R.A.P. No. 311(a) lists seven interlocutory orders from which an appeal may be taken as of right, none applied to the facts at bar.

The majority seeks to distinguish *Bruno, supra,* by stating that the appellant herein is precluded from presenting a defense. Insofar as affirmative defenses fall within the scope of New Matter, I fail to see any distinction between *Bruno* and the case *sub judice*. While it is true that a "finding of the finality of an order is a judicial conclusion which results from a practical rather than a technical interpretation", *Bruno, supra,* 515 Pa. at 50, 526 A.2d at 782 (citation omitted), practical considerations militate against a finding of finality in the instant case. I am concerned that the decision today will countenance the consideration of similar appeals, thereby taxing our already overburdened judicial system. *See Bruno, supra,* 515 Pa. at 50, 526 A.2d at 782, n. 1 ("By insisting that sanctions are final orders, the dissent, in effect, would open the floodgates to perpetual judicial impermanence and impotence at the trial level and an unmanageable quantum of cases choking the appellate system.")

Moreover, we should not engage in attempting to measure the substantive effect of a sanction order where it will be necessary to examine each case on an *ad hoc* basis since there is no clear line of demarcation which would disclose when the order simply handicaps the defense or may be said to effectively put the litigant out of court.

In light of the foregoing, I would dissent from the majority decision and would quash the appeal.