AVELLINO, J.,
Defendants have filed a notice of appeal, claiming the right to have my discovery order reviewed by the Superior Court. The order appealed from imposes sanctions of a preclusive nature, and is designed to punish defendants for their discovery misconduct.[1] I’m hoping, of course, that “gagging” defendants will enhance plaintiff’s chances of prevailing when (and if) her claim is called for trial. This aside, my order does not end this litigation in our court and, hence, it is hopelessly unappealable as a matter of right.[2]
*272 I certify that the statements I’ve made are accurate, and that the orders I’ve appended are true and correct copies of the originals which are part of the record maintained by our court. I suggest that the information I’ve supplied is sufficient for the Superior Court to conclude that it is not empowered to *273 review my order on this appeal which has been lodged prematurely.[3] Until the question of appellate jurisdiction is resolved,[4] I intend to ignore this appeal.[5] For example, I will not file an opinion explaining my reasons for selecting the sanction I imposed, transmit the record, or so on.[6]
More importantly, it is perfectly clear (at least to me) that defendants’ lawyer lodged this appeal without doing his legal homework,[7] or perhaps, in spite of the overwhelmingly hostile case authority that he may have uncovered.[8] It is equally plain that the *274 Pennsylvania judicial system can no longer afford to accommodate ignorant or lazy lawyers,[9] and will not tolerate mischievous ones.[10] Hence, unless defense counsel can justify his conduct (which I doubt),[11] I *275 think that the Superior Court should award such “damages as may be just” to those who have been victimized by his abuse of the appellate process.[12]
*276 I also suggest that the real victim of a premature appeal is not so much an appellee as it is the unified judicial system, and per extensio, the citizens whose tax dollars support it.[13] Consequently, if the Superior Court decides to sanction defense counsel (or his clients), it ought to consider the plight of Philadelphia taxpayers.[14] For example, judging from reports that have been widely publicized, the City of Philadelphia is having difficulty funding our court. Hence, our court would probably welcome financial reimbursement for the time I (and others) wasted processing this premature appeal.

Appendix A

ORDER OF COURT
And now, October 19, 1990, plaintiff’s motion for sanctions is granted. Defendants are barred from introducing evidence at trial on any subject covered by the plaintiff’s interrogatories and document requests which defendants failed to answer despite the court’s orders of June 25, 1990 and August 24, 1990.

*277
Appendix B

ORDER
And now, June 25, 1990, it is hereby ordered and decreed that defendants shall answer plaintiff’s interrogatories and requests for production of documents within 20 days or risk sanctions.

Appendix C

ORDER
And now, August 24, 1990, plaintiff’s motion that we sanction defendants for failing to comply with our order of June 25, 1990, is granted.
We direct that the following order be entered:
(1) Defendants shall pay a counsel fee of $300 for the preparation and filing of this motion;
(2) Defendants are cautioned that their continued and unexplained failure to comply with our order of June 25, 1990, may occasion even harsher sanctions; and
(3) Plaintiff is directed to refrain from seeking further sanctions for 30 days.

. See Appendix A (order of October 19, 1990, barring the defendants from introducing evidence at trial on the subjects covered by the interrogatories and document requests which defendants refused to answer despite two previous orders). See also, Appendix B (uncontested order of June 25, 1990, granting plaintiff’s motion to compel discovery), and Appendix C (uncontested order of August 24, 1990, imposing a financial sanction and warning the defendants that a harsh sanction was likely if they continued to ignore my order).

. Bruno v. Elitzky, 515 Pa. 47, 526 A.2d 781 (1987) (instructing the Superior Court to refrain from granting appellate review as of right for discovery sanction orders unless such orders literally end a litigation as to one or more of the parties). See also, Commonwealth, Dept. of Transportation v. Kmetz, 129 Pa. Commw. 97, 103, 564 A.2d 1040, 1043 (1989) (recognizing, correctly I think, that the Supreme Court used the Bruno case to lay down a “door-closing” rule respecting the appealability of discovery orders). Compare Commonwealth v. Dugger, 506 Pa. 537, 486 A.2d 382 (1985) (“thrashing” the Superior Court for attempting to interpret a “door-opening” jurisdictional rule which the Supreme Court had announced in a previous case decision).
*272 As the Dugger case illustrates, the Supreme Court has at least one “bad habit”: It sometimes announces a jurisdictional rule in a case decision instead of promulgating the same rule by using its regular lawmaking channels. See, e.g., The Pennsylvania Project — The Pennsylvania Supreme Court: Perspectives From Within, 23 Vill. L. Rev. 1041, 1084 (1977-78) (reporting on an interview with Justice Packel who lamented this practice which deprives the organized bar of an opportunity to participate in the creation of a new rule). For other illustrations of jurisdictional rules announced initially in case decisions, see, e.g., Dilliplaine v. Lehigh Valley Trust Co., 457 Pa. 255, 322 A.2d 114 (1974) (abolishing the doctrine of “fundamental error” and, hence, curtailing the jurisdiction of intermediate appellate courts); Commonwealth v. Brady, 510 Pa. 336, 508 A.2d 286 (1986) (creating a “frivolity” exception to the “Bolden ” prohibition against proceeding to trial when an accused appeals from the denial of a motion to dismiss on double jeopardy grounds).
Jurisdictional rules, like the “door-closing” rule laid down in Bruno, represent political judgments about a subject that is well beyond the constitutional grasp of inferior Pennsylvania courts, namely, the proper allocation of the state’s limited judicial resources. See, e.g., Pines, Pennsylvania Appellate Practice: Procedural Requirements and the Vagaries of Jurisdiction, 91 Dick. L. Rev. 55, 80 (1986) (“The [final order doctrine] represents a prudential standard by which to best allocate and maximize limited judicial resources.”). Stated differently, these rules originate in Article V, §10 of the State Constitution and may not be scrutinized by inferior courts which, quite simply, do not possess Article V power. Commonwealth v. Dugger, supra. See also, Commonwealth v. Chimenti, 510 Pa. 149, 507 A.2d 79 (1986); Reilly v. SEPTA, 507 Pa. 204, 489 A.2d 1291 (1985); Municipal Publications Inc. v. Court of Common Pleas, 507 Pa. 194, 489 A.2d 1286 (1985) (each “reminding” the Superior Court that it is hardly an autonomous, self-defining institution).

. Id. See also, White v. SEPTA, 366 Pa. Super. 16, 530 A.2d 870 (1987) (decided before Bruno, but correctly holding that a discovery order imposing sanctions of a preclusive nature is not appealable as a matter of right); Joyce & Associates v. Pivirotto, 358 Pa. Super. 50, 516 A.2d 763 (1986) (same); Griffin v. Tedesco, 355 Pa. Super. 475, 480 n.4, 513 A.2d 1020, 1022 n.4 (1986) (same). I should add, perhaps, that the Superior Court has repeatedly explained that discovery orders imposing sanctions against a defendant that go beyond fact preclusion and take the form of a verdict for the plaintiff on the larger issue of liability with damages to be determined at trial may not be appealed on a demand basis. See, e.g., Edney v. SEPTA, 356 Pa. Super. 160, 514 A.2d 194 (1986); Miller Oral Surgery Inc. v. Dinello, 342 Pa. Super. 577, 493 A.2d 741 (1985); Sims v. Feingold, 329 Pa. Super. 437, 478 A.2d 868 (1984). Accord Harasym v. Commonwealth, Dept. of Transportation, 321 Pa. Super. 492, 468 A.2d 817 (1983) (implicating an analogous sanction as between defendants).

. Cf. Apostol v. Gallion, 870 F.2d 1335 (7th Cir. 1989) (recommending, sensibly I think, that trial courts should use this style of certification to trigger a resolution of claims to competing jurisdiction with intermediate appellate courts).

. See Pa.R.A.P. 1701(b)(6) (authorizing trial judges to ignore unauthorized appeals from interlocutory orders).

. Id.

. See, e.g., notes 2 and 3, supra (collecting cases).

. Id. “Dilatory” (or “spiteful”) appeals are a bane to the discovery process and have been repeatedly condemned in the reported decisions. See, e.g., Hall v. Lee, 285 Pa. Super. 542, 548, 428 A.2d 178, 181 (1981) (“[I]f this order [imposing a *274 financial sanction] were found to be presently appealable, it would tend to discourage the lower court’s use of this disciplinary tool, and [piecemeal appeals] would merely become another weapon in the arsenal of dilatory practice for the attorney who wished to delay judicial proceedings.”). Accord McManus v. Chubb Group of Insurance Cos., 342 Pa. Super. 405, 410, 493 A.2d 84, 87 (1985). The Supreme Court doubtless shares these concerns. See, e.g., Bruno, 515 Pa. at 50 n.1, 526 A.2d at 782 n.l:
“By insisting that sanctions are final orders, the dissent, in effect, would open the floodgates to perpetual judicial impermanence and impotence at the trial level and an unmanageable quantum of cases choking the appellate system. We should be reminded that trial [judges] are empowered to sanction litigants in a variety of ways [pursuant to rule 4019] and [are required] to enforce the obligations of the judicial system in a fair, fast, and firm manner. Followed to its logical conclusion, the argument of my learned colleague would lead inexorably to disastrous consequences.”

. See, e.g., Comment, The Demise of the Doctrine of Basic and Fundamental Error in Pennsylvania and the New Role of Strict Issue Preservation, 23 Duq. L. Rev. 395 (1985) (explaining, nicely I think, that the “Dilliplaine” line of cases represents a political judgment by the Supreme Court that Pennsylvania’s judicial system can no longer afford to squander any time or money accommodating incompetent or la2y lawyers).

. Speaking broadly, Pennsylvania courts have always possessed the inherent authority to punish those who abuse court process. The countless rules (and statutes) conferring sanction authority, such as Pa.R.C.P. 4019 (discovery) or Pa.R.A.P. 2744 (frivolous appeals), merely “clarify” the authority to punish in different settings.

. In Bruno, the Supreme Court explicitly rejected the notion that “constructive finality,” Pines, note 2, supra at 88-91, was the appropriate doctrine for determining access to appellate courts for appeals as of right from discovery sanction orders. Hence, the Supreme Court “trumped” sub silento a few contrary decisions by lower appellate courts that were *275 hopelessly at odds with later decisions by the same courts. See, e.g., the later case decisions collected, note 3, supra (refusing to entertain appeals as of right from discovery orders imposing sanctions of a preclusive nature), and compare Brunetti v. SEPTA, 329 Pa. Super. 477, 478 A.2d 889 (1984); Roman v. Pearlstein, 329 Pa. Super. 392, 478 A.2d 845 (1984); Marshall v. SEPTA, 76 Pa. Commw. 205, 463 A.2d 1215 (1983) (each holding that a discovery order imposing a sanction of a preclusive nature was a “constructively final” order and, hence, was appealable as of right).
Despite Bruno’s’ embrace of “classic finality,” Pines, note 2, supra, at 78-81, as the appropriate doctrine for determining access to appellate courts for appeals as of right from discovery sanction orders, in Weist v. ARCO, 374 Pa. Super. 405, 543 A.2d 142 (1988), two judges of the Superior Court (acting sua sponte) applied the doctrine of “constructive finality” to a preclusive sanction, and “distinguished” the Supreme Court’s rule banning appeals as of right from discovery orders that did not end a litigation. Those judges were probably unknowing victims of the Supreme Court’s “bad habit” of announcing jurisdictional rules in case decisions. Note 2, supra. Stated differently, they interpreted Bruno as supplying a legal “principle” as opposed to laying down an Article V rule. This sort of mistake has occurred before, much to the chagrin of the Supreme Court. See, e.g., Commonwealth v. Dugger, note 2, supra (“thrashing” the Superior Court). Meanwhile, the appealability holding in Weist is hopelessly at odds with existing Superior Court decisions that the two-judge majority never mentioned. See note 3, supra, (collecting cases). For these reasons, the precedential value of Weist is problematic at best. Nevertheless, Weist ought to be explicitly overruled by the Superior Court since it represents the only “constructive finality” cloud that remains in the sky above “Discoveryland.”

. Pa.R.A.P. 2744. The quoted language represents a dramatic enlargement of the Superior Court’s sanction authority. See, e.g., Kelley v. Thompson, 326 Pa. Super. 364, 474 A.2d 44 (1984) (expressing dissatisfaction with former rule 2744).

. For a concise description of the usual justifications for eschewing “piecemeal” appeals, see, e.g., Elderkin v. Sedney, 354 Pa. Super. 253, 511 A.2d 858 (1986), appeal denied, 514 Pa. 617, 521 A.2d 932 (1987). For a broader discussion contending, “We must think hard about ways to save time and money in the litigation system so that the system can function properly and thereby provide justice for all who wish to use it or are affected by it,” see Newman, Rethinking Fairness: Perspectives on the Litigation Process, 94 Yale L.J. 1643, 1657-8 (1985).

. The Superior Court should also consider the plight of other Pennsylvania taxpayers. For example, the Superior Court is reputed to be one of America’s busiest (or “hardest working”) appellate courts. Pines, supra note 2, at 142 and n. 389 (quoting from a report of the American Judicature Society). As such, it can hardly afford to squander its time processing premature appeals.