590 A.2d 1255

**Janice B. LECKEY, Appellant,**

**v.**

**The AETNA CASUALTY AND SURETY COMPANY, Appellee.**

Superior Court of Pennsylvania.

Argued Jan. 9, 1991.

Filed April 12, 1991.

Reargument Denied June 21, 1991.

324

---

Edward C. Leckey, Pittsburgh, for appellant.

Avrum Levicoff, Pittsburgh, for appellee.

Before TAMILIA, POPOVICH and JOHNSON, JJ.

POPOVICH, Judge:

This case involves an appeal from the June 1, 1990, order of the Court of Common Pleas of Allegheny County denying a motion to amend a complaint by the plaintiff/appellant, Janice B. Leckey. We quash.

A detailed account of the facts of record is necessary to understand the basis for our determination: This suit was commenced by the filing of a praecipe for summons in civil action on May 27, 1988, by the plaintiff's attorney/husband, Edward C. Leckey, against The Aetna Casualty and Surety Company. Aetna responded with a rule to file a complaint upon the plaintiff.

A 3–count complaint sounding in trespass and contract was filed on August 26, 1988, in which the plaintiff alleged that she had a policy of insurance with Aetna covering her 1979 Mercury Zephyr against loss and/or damage. Paragraphs 4 & 5.

On May 30, 1986, the plaintiff's vehicle was damaged by flood-waters. The loss was reported to Aetna within 4 days. However, it was not until 2 weeks after the loss that the plaintiff was contacted by Aetna's adjustor about the damages to the vehicle. She was informed that the vehicle was a total loss and she was offered "less than one-half of the value of the automobile to Plaintiff." Paragraph 10.

It was the assertion of the plaintiff that had Aetna acted sooner the vehicle "could have been repaired" and she "could and would have driven it for another five years". Paragraphs 8 & 9. Therefore, the plaintiff refused Aetna's offer ($2,295.00), which was well below the amount the vehicle would have been worth (more than $5,000.00) had it been repaired. Paragraph 12. Also, the plaintiff averred that Aetna had removed the vehicle from where the plaintiff had it towed (Forest Hills Motor Company) to an "undisclosed location" constituting "conversion" of the automobile justifying the awarding of exemplary damages, together with the value of the Zephyr plus interest, exceeding $25,-000.00. Id.

In the remaining two counts of the complaint, the plaintiff requested payment, as provided for in the policy of insurance, for towing ($25.00) and a substitute vehicle ($450.00), as well as treble damages for Aetna's alleged failure to advise her of the right to seek compensation (contrary to Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201–9.2).

Preliminary objections in the nature of a demurrer and a motion to strike were filed on September 9, 1988, to the request of the plaintiff for exemplary and treble damages (Counts I & III), both of which were claimed to have been unwarranted. In response, the plaintiff filed an amended complaint deleting Paragraph 12 of the original complaint, which made reference to Aetna refusing to pay and the plaintiff not accepting less than $5,000.00 for the vehicle. Preliminary objections, seeking the same relief as previously requested, were filed and dismissed by order of court dated November 16, 1988.

An "answer and new matter" to the amended complaint were filed by Aetna claiming, *inter alia,* the cost of repairing the vehicle would have exceeded the "fair value of the vehicle regardless of when ... repairs were completed"; the vehicle was a total loss; the offer made was not less than ½ of the value of the automobile; and the vehicle was taken by the insurer "in compliance with the provisions of the subject policy." Paragraphs 8–11. The remaining allegations in the plaintiff's complaint were denied.

In new matter, Aetna asserted that the plaintiff failed to comply with the terms of the policy, all actions taken by it were in compliance with the policy issued and relief sought by the plaintiff was "foreclosed by virtue of the Pennsylvania Unfair Insurance Practices Act which provide[d] a full and complete administrative remedy which plaintiff ha[d] failed to pursue." Paragraph 28.

The plaintiff filed preliminary objections in the nature of a motion to strike and for a more specific pleading. By order dated February 6, 1989, Paragraphs 27 and 28 of Aetna's answer to the amended complaint were stricken,

and Aetna had 20 days to plead more specifically as to Paragraph 20 of its answer. The latter occurred on February 28, 1989, in the form of an amended answer and detailed those instances in which Aetna offered to settle but was refused cooperation by the plaintiff and/or her representative. Again, preliminary objections followed claiming that the plaintiff was not seeking redress of her complaints under Aetna's insurance policy. Rather, her recovery was premised solely in tort—the first count being for "conversion" of her automobile and the third count alleging misrepresentation under the Pennsylvania Consumer Protection Law. See plaintiff's Brief In Support of Preliminary Objections at page 3. The remaining allegations of Aetna were labelled impertinent and scandalous.

By order dated April 21, 1989, the case was ordered to arbitration since the court concluded that the plaintiff could not recover in excess of $20,000.00 despite her request for punitive damages, and the plaintiff's preliminary objections were sustained in part and denied in part. The plaintiff filed a reply denying all of the allegations made by Aetna in its amended answer.

Next, we have of record a motion for a protective order by Aetna against the plaintiff's second set of interrogatories as "designed to unreasonably annoy and oppress" Aetna and a blatant misuse of the discovery process given that the case was assigned to arbitration. An order was issued on June 16, 1989, dispensing with the need for Aetna to answer the second set of interrogatories.

A motion to compel the production of documents was denied by order dated 6/30/89, whereas a petition to compel answers at deposition and production of documents for inspection was granted September 29, 1989.

A non pros was entered for the plaintiff's failure to appear before an arbitration panel assigned to hear the case on September 6, 1989. Five days later, the plaintiff's counsel/husband filed a petition to vacate the non pros on grounds that a hearing (on September 22, 1989) to resolve compelling answers at deposition and the production of

documents should have resulted in the removal of the case from the arbitration list, the failure of which was "a result of a clerical error by the Arbitration Clerks[.]" Paragraphs 4 & 5. The order vacating the non pros was issued September 29, 1989.

By praecipe filed May 4, 1990, Aetna asked that the case be placed on the next available arbitration list for June 18, 1990. Also, Aetna's second motion for a protective order was granted on May 18, 1990, so as to preclude the plaintiff from taking a deposition, a matter which was not provided for in the court's September 29, 1989, order vacating the non pros.

On June 4, 1990, new counsel for the plaintiff filed a motion for leave to amend the plaintiff's "Amended Complaint" to delete an item of damages and assert another cause of action not hereinbefore alleged, *i.e.,* that Aetna and the salvage service (which took possession of the plaintiff's automobile at Aetna's direction) had engaged in a course of conduct ("an Enterprise by association in fact") for "a substantial number of years before June, 1986 ... to date," amounting to the repossession of vehicles insured by Aetna, selling them and realizing salvage value knowing that the automobiles could be repaired for less than their value to the owner, without disclosing said facts to the owners, and/or taking possession of an insured's automobile without right or authorization to do so and transporting it to the salvage company. See Count IV of the plaintiff's Amended Complaint.

The request to add Count IV to the plaintiff's amended complaint was denied by order of court dated 6/1/90. This appeal was filed July 2, 1990.[1]

---

**1.** To complete the procedural picture, we would note that the case at bar also proceeded to arbitration on June 18, 1990, and resulted in an award in favor of the plaintiff for $2,295.80. A notice of appeal from the award of the Board of Arbitrators of the Allegheny County Court of Common Pleas was filed on June 29, 1990. See Record No. 31. A trial by jury was demanded by the plaintiff in her appeal *de novo* to the Court of Common Pleas of Allegheny County. Id.

Before addressing the issue posed for our review, *i.e.*, whether the denial of the motion to amend the complaint was an abuse of discretion by the court below, we need to determine whether the appeal is (1) timely, and (2) final for appellate review purposes by this Court.

■ On the timeliness aspect of the question posed, we note that the plaintiff perfected her appeal on the *31st day* following the lower court's June 1, 1990, order denying her motion to amend her complaint. At first blush, it would appear that this is untimely since one must file an appeal within *30 days* after the entry of the order from which the appeal is taken. Pa.R.App.P. 903(a).

■ In this case, the issuance and entry of the order occurred at two different times. For example, the lower court "issued" the order denying the motion to amend on *June 1, 1990.* However, the June 1, 1990, order was not "entered" by the prothonotary in the judgment docket until *June 4, 1990.* See *Lansdowne v. G.C. Murphy Co.*, 358 Pa.Super. 448, 517 A.2d 1318 (1986), wherein this Court discussed the difference between the issuance of a court order and the entry of the same (spreading it on the record) by the prothonotary on the judgment docket. Thus, because the entry date of the order appealed is the pivotal time-frame looked to in this jurisdiction to calculate the timeliness of an appeal (see Pa.R.App.P. 301(a); Rule 903(a)), we find that the order appealed is not time-barred. See *Lansdowne*, supra; Rules 301(a), 903(a).

■ With regard to the finality of the order appealed, we deem it appropriate to examine the matter *sua sponte*, despite it not having been raised by either of the parties. *Turner v. May Corp.*, 285 Pa.Super. 241, 427 A.2d 203 (1981).

As has been stated on numerous occasions, the finality of an order is a judicial conclusion which can be reached only after an examination of its ramifications. It has also been said that if the practical consequences of the order of the lower court is effectively to put an appellant "out

of court" the order will be treated as final. Likewise, an order is "final" if it precludes a party from presenting the merits of his claim to the lower court.

*Lansdowne,* supra, 358 Pa.Super. at 452, 517 A.2d at 1320 (Citations omitted).

Additionally, this Court has stated in *Praisner v. Stocker,* 313 Pa.Super. 332, 459 A.2d 1255 (1983) (en banc), that the dismissal of a single count from a multi-count complaint, where to do so precludes the appellant from having the merits of his/her dismissed cause of action decided, is an appealable matter. In particular, the *Praisner* Court wrote:

Where separate and distinct causes of action have been joined under permissive joinder standards of Pa.R.C.P. 1020(a) or Pa.R.C.P. 1044(a), the appealability of a judgment entered on one or more but not all counts must be distinguished from the situation in which separate counts have been used to state alternate theories for recovery on the same cause of action. In the former situation the summary judgment has terminated litigation upon a separate and distinct cause of action. In the latter, an order dismissing or entering judgment on one or more but not all counts of a complaint is interlocutory, for the plaintiff can, nevertheless, proceed to a determination on the underlying cause of action. Thus, the dismissal of a count alleging damages for breach of an express contract is not appealable if an alternate count seeking to recover the same damages based on quantum merit remains undecided. Similarly, there is no final order where a count averring negligence has been dismissed but there remains undetermined a count alleging liability for a defective product under Section 402A of the Restatement (Second) of Torts. For similar reasons, where one of several counts seeks to recover punitive damages in a complaint alleging a breach of contract, a dismissal of that count does not put the plaintiff out of court on his underlying cause of action. Only if he is successful in his cause of action for breach of contract does the measure of dam-

ages become relevant. The same result obtains where a separate count seeking punitive damages in a trespass action has been dismissed. In cases such as these the plaintiff is not out of court when one of several counts has been dismissed, and it is procedurally preferable to delay appellate review until the entire action has been determined

313 Pa.Super. at 341–42, 459 A.2d at 1260 (Citations omitted).

Instantly, as stated quite succinctly by the plaintiff in her pleadings, the tort (trespass)[2] and contract[3] suit she instituted was premised upon theories of recovery anchored in "conversion" (trespass)[4] and "misrepresentation" (contract).[5] These two principles remain in place as the predicate for the plaintiff's suit sounding in trespass and contract seeking to recover monies claimed due and owing, *e.g.*, value of the 1979 Mercury, towing expenses and cost for a substitute vehicle, as well as compensatory, punitive ("exemplary") and treble damages for the defendant's behavior.

In other words, the plaintiff's contention, under the rubric of "trespass" and "contract", remain intact as the predicate for the suit. Her causes of action, under the legend of "tort" (trespass) and "contract", to recoup monies from the defendant have not been altered. The plaintiff's attempt to inject claimed violations of the Racketeer Influenced and Corrupt Organization Act (RICO), 18 U.S.C. § 1961 *et seq.*, into the lawsuit is merely another *theory* of recovery under the penumbra of the "tort"/"contract" banner seeking reimbursement and money damages for claimed wrongs com-

**2.** First Complaint filed August 26, 1988, Count I, Paragraph 11; Amended Complaint filed September 21, 1988, Count I, Paragraph 11.

**3.** First Complaint filed August 26, 1988, Count II, Paragraphs 14 & 15; id at Count III, Paragraphs 17 & 18; Amended Complaint filed September 21, 1988, Paragraphs 13 & 14; id at Count III, Paragraphs 16 & 17.

**4.** First Complaint filed August 26, 1988, at page 3 (Mandate/"Wherefore" Paragraph); Amended Complaint filed September 21, 1988, at page 3 (Mandate/"Wherefore" Paragraph).

**5.** First Complaint filed August 26, 1988, Count III; Amended Complaint filed September 21, 1988, Count III.

mitted by the defendant. As such, we do not find the denial of the plaintiff's ability to amend her "amended complaint", to include averments violative of the RICO Act, to be sufficiently separate and distinct in substance to constitute a cause of action independent of the "tort" and "contract" causes of action already proffered to warrant an immediate appeal with its denial. See *Praisner*, supra.

Moreover, evidence that the plaintiff was not "out of court" with the lower court's order denying her an opportunity to amend her complaint for a second time appears from the fact that she was permitted to prosecute her complaint before an Arbitration Board on June 18, 1990, wherein she was awarded $2,295.80. See Record No. 30. This June 18th award has been appealed to the Court of Common Pleas of Allegheny County for a trial *de novo*. See Record No. 31. Accordingly, given the pendency of the plaintiff's trial *de novo*, there appears to be no reason to treat the denial of her motion to amend "separable from, and collateral to, rights asserted in the action, [neither is it] too important to be denied review [nor] too independent of the cause itself to require that appellate consideration [not] be deferred until the whole case is adjudicated." *Praisner*, supra, 313 Pa.Super. at 342, 459 A.2d at 1261, quoting *Cohen v. Beneficial Industrial Loan Corporation*, 337 U.S. 541, 546, 69 S.Ct. 1221, 1225, 93 L.Ed. 1528 (1949); see also *Gray v. State Farm Insurance Co.*, 328 Pa.Super. 532, 477 A.2d 868 (1984).

The Motion for Leave to Amend by the plaintiff alleged that she discovered "another cause of action" not previously asserted; it appeared under Count IV of the Second Amended Complaint as a violation of the RICO Act and asked for treble damages, *the same relief* sought by the plaintiff in Count III of her initial and first amended complaint. As such, we find the present appeal to be premature under the *Praisner* rationale, which discourages piecemeal litigation, especially where only a theory of recovery is being foreclosed to the plaintiff but not her causes of action in tort and contract. Accord *Trackers Raceway v. Com-*

*stock Agency,* 400 Pa.Super. 432, 583 A.2d 1193 (1990); *Motheral v. Burkhart,* 400 Pa.Super. 408, 583 A.2d 1180 (1990).

■ Even if, *arguendo,* we were to hold that the appeal was from a final order, we would hold that a RICO claim for alleged acts of fraud by an insurer is not permitted by the McCarran–Ferguson Act, 15 U.S.C. § 1011 *et seq.* See *Richhart v. Metropolitan Life Insurance Co.* (reported at 1990 WL 39268, 1990 U.S.Dist. LEXIS 3597, filed March 30, 1990), wherein the United States District Court for the Eastern District of Pennsylvania wrote in relevant part that:

> The McCarran–Ferguson Act was promulgated by Congress in 1945 with the intention of leaving regulation of the insurance industry to the states.... Subsequent to the enactment of McCarran–Ferguson, no Congressional pronouncements would be applicable to the business of insurance unless their stated purpose was directed at such, or express mention of the insurance industry's inclusion in the provisions was made in the text. 15 U.S.C. § 1012(b). The intention was to promote regulation by the states, individually, without leaving room for unregulated operation of the insurance industry.
>
> Where a claim for relief is made affecting the insurance industry, the McCarran–Ferguson Act bars application of federal law if:
>
> 1. The challenged activity is business of insurance; and
>
> 2. Such activity is regulated by state law.
>
> *McIlhenny v. American Title Ins. Co.,* 418 F.Supp. 364, 367 (E.D.Pa.1976). There is the further requirement stated in the act that the federal statute that a party claims entitlement under must not be one addressing the business of insurance, or one which makes reference to its proper application thereto. 15 U.S.C. § 1012(b).

The second requirement necessary for the McCarran–Ferguson Act to bar application of federal law is that the activity be regulated by state law.

\* \* \* \* \* \*

[T]he fact that state law permits a party to assert a right under common law as well as statutory theories[, as exists in Pennsylvania,] does nothing to preempt the McCarran–Ferguson Act's preemption of federal causes of action in the insurance field.

(1990 WL 39268, at 2, 3, 1990 U.S.Dist. LEXIS 3597, at 3–4, 6)

*Sub judice*, as in *Richhart*, there are numerous provisions in the Unfair Insurance Practices Act, 40 P.S. § 1171.1 *et seq.* (Supp.1990), not to mention the "Declaration of purpose" proviso, which could be read to encompass the problems raised in the Second Amended Complaint of the plaintiff. See, *e.g.*, 40 P.S. §§ 1171.2, 1171.5.

Consequently, there is no question of the applicability of the Pennsylvania insurance scheme to the plaintiff's allegations of wrongdoing. Thus, the plaintiff's RICO claims must be dismissed as they are barred by the McCarran–Ferguson Act. *Richhart*, supra.

For the reasons herein stated, we hold that the plaintiff's appeal is not only premature, but, if the issue of the permissibility of pleading RICO Act violations in this suit were dealt with as other than dictum, an affirmance of the order appealed would be justified.

Appeal quashed.

TAMILIA, J., files a dissenting statement.

TAMILIA, Judge, dissenting:

I respectfully dissent. Rather than quash the appeal, I would affirm on the basis of the Memorandum Opinion of the trial court.