639 A.2d 1227

Kathleen GRUNDE and Arno Grunde,

v.

**Denise HUFF, M.D., Appellant.**

Superior Court of Pennsylvania.

Submitted Nov. 29, 1993.

Filed April 7, 1994.

Kevin H. Wright, Plymouth Meeting, for appellant.

Henry B. Fitzpatrick, Philadelphia, for appellee.

Before BECK, TAMILIA and HESTER, JJ.

HESTER, Judge:

The conduct in this case demonstrates the type of legal maneuvering which suggests to the public that lawyers are akin to combat infantrymen operating in a battle zone engaging in hand-to-hand combat. From the filing of this lawsuit and its eleventh hour discontinuance, to the scheduling of discovery and the refusal to accommodate reasonable requests, to the conduct of the attorneys at the deposition of the defendant, the key word here is unprofessional. As an aid to understanding the issues, we have set forth an extensive narrative of the facts and procedural history. For the reasons which follow, we reverse.

On September 1, 1990, plaintiff-appellee Kathleen Grunde sought medical treatment from defendant-appellant Dr. Denise Huff of Pediatric Medical Associates for appellee's then seventeen-month-old daughter, Eileen. Dr. Huff described the child's left leg as extremely bruised and swollen from the foot to the knee. In fact, the color was so bad the doctor was concerned about the vascular supply to the leg. Since Dr. Huff immediately recognized that the child's leg was severely fractured by looking at it, she referred Mrs. Grunde to Children's Hospital in Philadelphia. An orthopedic surgeon at Children's Hospital diagnosed a "crush" fracture to the fibula and tibia at the growth plate.

In her deposition, Dr. Huff stated that Mrs. Grunde, uncertain as to how the injury happened, opined that the child may have caught her leg between the crib bars. Dr. Huff also stated that Mrs. Grunde told a nurse at Pediatric Medical Associates that she had dropped the child at Sesame Place.

The orthopedic surgeon at Children's Hospital told Dr. Huff that Mrs. Grunde had stated that the child may have been injured on a ride at Sesame Place. Based on the differing explanations for this young child's severe injury, Dr. Huff concluded that she was obligated to report the child's injury pursuant to the Child Protective Services Law, 23 Pa.C.S. § 6311,[1] which she did on September 11, 1990.

Notwithstanding 23 Pa.C.S. § 6318,[2] the child's parents, Kathleen and Arno Grunde, appellees, hereinafter referred to as parents, filed a complaint on December 17, 1990, against Dr. Huff asserting causes of action for defamation, intentional infliction of emotional distress, negligent infliction of emotional distress, and negligence. The complaint was served on Dr. Huff on January 3, 1991. On January 21, 1991, parents served a notice of deposition upon Dr. Huff which was scheduled for January 29, 1991. On January 23, 1991, parents' counsel received a letter from counsel for Dr. Huff stating that Dr. Huff would not attend the deposition on January 29 for the following reasons: 1) the notice of deposition had been served fewer than thirty days following the service of the complaint, thus leave of court was required pursuant to Pa.R.C.P. 4007.-2(b), 2) five business days notice was not reasonable notice as required by Pa.R.C.P. 4007.1(a), and 3) counsel was listed on the jury trial list at that time and likely would be engaged in a jury trial.

1. 23 Pa.C.S. § 6311 provides, in pertinent part,

   (a) **General rule.**—Persons who, in the course of their employment, occupation or practice of their profession, come into contact with children shall report or cause a report to be made ... when they have reason to believe, on the basis of their medical, professional or other training and experience, that a child coming before them in their professional or official capacity is an abused child.

   (b) **Enumeration of persons required to report.**—Persons required to report under subsection (a) include, but are not limited to, any licensed physician....

2. 23 Pa.C.S. § 6318 provides, in pertinent part,

   **§ 6318. Immunity from liability**

   (a) **General rule.**—A person ... participating in good faith in the making of a report ... shall have immunity from any civil or criminal liability that might otherwise result by reason of those actions.

Parents' counsel wasted no time in firing back a letter the following day in which he responded that leave of court to take Dr. Huff's deposition was not required since Dr. Huff had served interrogatories on the plaintiffs; therefore, they had "otherwise sought discovery" thereby negating the requirement of obtaining leave of court. Counsel stated that he would "expect your client to be present for the deposition at the appointed time and place. . . ." Reproduced Record ("R.R.") at 9a.

Notwithstanding Dr. Huff's notice that she could not be present for the deposition on the scheduled day, parents' counsel allegedly spent twelve hours preparing for the deposition and attended at the appointed date and time, waiting for three hours. Then, the next day, parents filed a petition for contempt and to compel attendance at deposition in which they requested that a fine be imposed and sanctions awarded in the form of counsel fees "for the time reasonably expended by counsel" and that Dr. Huff be ordered to appear for her deposition at a time and place convenient to plaintiffs within twenty days of entry of the order. R.R. at 14a. The court denied the petition on March 20, 1991.

Parents filed a petition for reconsideration or for a hearing on March 25, 1991. On July 22, 1991, the trial court filed the following order:

AND NOW, this 19th day of July, 1991, upon consideration of Plaintiffs' Petition for Reconsideration or For a Hearing, it is hereby ORDERED and DECREED that the Court's March 20, 1991 Order is vacated, and that Defendant Denise Huff, M.D. is to submit to a deposition at a time and place convenient to plaintiffs not later than twenty (20) days from the date hereof, to pay a fine in the amount of $5,000.00 and to pay reasonable expenses, including counsel fees, incurred by plaintiffs as a result of her failure and the failure of the custodian of records to attend their January 29, 1991 deposition.

R.R. at 85a. By order dated August 5, 1991, and filed August 14, 1991, upon learning that Dr. Huff's deposition had taken place and upon being informed that the July 19, 1991 order

mistakenly had omitted the word "or," the Honorable Anthony Semeraro corrected the July 19, 1991 order as follows: "not later than twenty (20) days from the date hereof, or to pay a fine in the amount of $5,000,00." The August 14, 1991 order also noted that Dr. Huff's appearance at deposition had been satisfied.

Parents filed a petition to confirm amount of counsel fees on August 2, 1991, requesting fees in the amount of $8,660.00 for the failure of Dr. Huff and the custodian of records to attend the January 29, 1991 deposition, and Dr. Huff replied. A hearing was held before Judge Semeraro on September 17, 1991, at which time the trial court directed the parties to file briefs. On May 27, 1992, another judge, the Honorable Kenneth A. Clouse, entered an order pursuant to the July 19, 1991 order and granted counsel fees to parents in the amount of $4,425.00 representing eighteen hours of legal work at $175.00 per hour and 10.2 hours at $125.00 per hour. Trial court opinion, 9/2/93 at 4.

On July 1, 1992, parents filed another petition for contempt alleging that Dr. Huff had failed to comply with the court's order of May 27, 1992, by refusing to pay counsel fees. Dr. Huff responded, but the court never ruled upon the matter.

A pretrial conference was held the week before trial was to begin. At the call of the list the following week, on May 3, 1993, counsel for Dr. Huff learned that unbeknownst to him, parents had filed a praecipe to discontinue without prejudice on April 27, 1993. On May 17, 1993, counsel for Dr. Huff twice wrote to the trial court requesting that an order terminating the litigation be entered since the praecipe to discontinue was not a final order, and he wished to file an appeal. R.R. at 162a–65a. In those letters, counsel suggested that the court utilize May 3, 1993, the date counsel attended the call of the list and was informed by the trial court that parents had praeciped to discontinue. While waiting for the requested order, appellant attempted to file a notice of appeal on June 1, 1993, but it allegedly was refused by the Office of Judicial Support because no final order had been entered on the docket. Therefore, on June 10, 1993, defendant-appellant filed

a praecipe for an adverse order. Finally, on that day, in response to counsel's praecipe, the court entered the following order:

> AND NOW, this 10th day of June, 1993, upon consideration of the Praecipe of plaintiffs' attorney to discontinue the above-captioned matter, and any response thereto, that request is granted and the Office of Judicial Support shall enter an Order dated May 3, 1993, indicating the matter has been discontinued.

Dr. Huff filed a notice of appeal the following day.

■ The trial court asserts that the appeal to this court should be quashed as untimely. Unfortunately, the court's reasons are unclear. On one hand, the court declares that the "entry" date of an order, not the "issuance" date is the pivotal date for purposes of calculating the timeliness of an appeal. In support, it cites *Leckey v. Aetna Casualty and Surety Co.*, 404 Pa.Super. 323, 590 A.2d 1255 (1991). Our review of that case supports the timeliness of the appeal in the instant case, not the reverse. In *Leckey*, the plaintiff perfected her appeal on the thirty-first day following the trial court's June 1, 1990 order. However, while the court "issued" the order on June 1, the prothonotary did not "enter" it on the docket until June 4, 1990. Thus, we held that June 4, 1990, was "the pivotal time-frame looked to in this jurisdiction to calculate the timeliness of an appeal." *Id.*, 404 Pa.Super. at 329, 590 A.2d at 1258. Applying *Leckey* to the facts of this case, the relevant date obviously is June 10, 1993, not May 3, 1993. Any other result would be unjust. *See also Clinger v. Tilley*, 423 Pa.Super. 121, 620 A.2d 529 (1993) (date on which order is entered is date on which the order is filed with the prothonotary).

■ On the other hand, the trial court follows its citation to *Leckey* with the following statement: "An appeal of a contempt order will be quashed as untimely, where it has been filed more than thirty (30) days after the order was entered." Trial court opinion, 9/2/93, at 6. If, by that statement, the trial court is suggesting either that the July 19, 1991 order awarding counsel fees for Dr. Huff's failure to attend the

January 29, 1991 deposition, or the May 27, 1992 order confirming fees in the amount of $4,425.00 is the order from which the appeal should lie, again the court is mistaken. In *West v. Andersen*, 426 Pa.Super. 127, 626 A.2d 606 (1993), we addressed whether the appeal from an order awarding counsel fees to the defendant for the failure of the plaintiffs to be deposed is a final order. We quashed the appeal and held that the order of counsel fees was not a final, appealable order as it was completely collateral to the underlying medical malpractice action, and litigation on the action would continue after the discovery sanction. *West* clearly is on all fours with the present case. Thus, we hold that the instant appeal is timely.

Appellant raises issues questioning the propriety, severity, and appropriateness of the orders awarding attorney fees. We note initially that the imposition and choice of sanctions for noncompliance with discovery under Pa.R.C.P. 4019 is within the discretion of the trial court. The rule requires the court to select a punishment that fits the crime. *Weist v. Atlantic Richfield Company*, 374 Pa.Super. 405, 543 A.2d 142 (1988). Thus, we review the award for an abuse of discretion.

As stated above, parents filed a petition for contempt in which they requested sanctions. Clearly, there was no order entered holding Dr. Huff in contempt nor, in our view, could there have been. Our review of the record makes clear that parents sought sanctions pursuant to Pa.R.C.P. 4019. Without a doubt, the trial court failed to consider the necessary factors when a discovery sanction is imposed. *Pride Contracting, Inc. v. Biehn Construction, Inc.*, 381 Pa.Super. 155, 553 A.2d 82 (1989).

We discussed these factors in *Steinfurth v. LaManna*, 404 Pa.Super. 384, 389, 590 A.2d 1286, 1288–89 (1991) (citations omitted):

We first examine the party's failure in light of the prejudice caused to the opposing party and whether the prejudice can be cured. A second factor to be examined in reviewing a sanction is the defaulting party's willfulness or bad faith in

failing to comply with the discovery order, *i.e.*, the merits of their excuse. Third, we consider the number of discovery violations. Repeated discovery abuses are disapproved. Finally, as noted above, the importance of the precluded evidence in light of the failure must be considered.

In the present case, all factors militate against the imposition of the sanction. There was no failure to comply with previous orders. In fact, in this instance there was no order compelling the deposition. Further, there was no showing of willfulness or bad faith.[3] Finally, parents suffered no prejudice.

The timing of the scheduling of this deposition and the refusal to make accommodations when this case was in its initial stages militate against the imposition of sanctions. The complaint had just been served on the defendant on January 3, 1991, and service was docketed on January 11, 1991. The notice of deposition was forwarded on January 21, 1991, which was a federal holiday, the celebration of Martin Luther King Day, for a deposition scheduled five business days later. Counsel for Dr. Huff replied that his client was not given reasonable notice of the deposition pursuant to Pa.R.C.P. 4007.1. Moreover, counsel asserted that he believed, in reliance upon Pa.R.C.P. 4007.2, that a deposition scheduled within thirty days of service of the complaint, under the circumstances, required leave of court. Finally, counsel for Dr. Huff noted that he believed he would be involved in a jury trial on the date noticed. Unbelievably, after learning this, parents' counsel spent twelve hours preparing for the deposition and appeared at the appointed time and waited three hours.

We believe that *Steinfurth* requires that we reverse the imposition of sanctions in this case. Moreover, the trial court's imposition of counsel fees without violation of a court order was an abuse of discretion in light of the mandatory

---

3. The comment to Rule 4019, in stating that the 1978 amendments to the rule deleted the word "willfully" in subdivision (a), notes that willfulness remains a factor in determining the extent of the sanction but no longer is an essential condition precedent to the power to impose a sanction.

balancing of prejudice which should have been conducted by the trial court before imposing sanctions.

Order awarding counsel fees is reversed.