**CROYDON PLASTICS CO., INC., Appellant,**

v.

**LOWER BUCKS COOLING & HEATING and the Trane Company, Appellees.**

Superior Court of Pennsylvania.

Argued June 25, 1997.

Filed July 29, 1997.

Garland D. Cherry, Jr., Media, for appellant.

Douglas E. Ress, Philadelphia, for The Trane Company, appellee.

Before McEWEN, President Judge, and POPOVICH and OLSZEWSKI, JJ.

OLSZEWSKI, Judge.

On November 19, 1992, the Croydon Plastics Company was consumed by fire. After the three-alarm blaze was extinguished, the charred remains of the plant were unsalvageable and the estimated loss to Croydon was $4,000,000.00.

After paying Croydon approximately $1,500,000.00 in damages, Croydon's insurer initiated the instant action by filing a writ of summons in the Court of Common Pleas of Bucks County. Speculating that the fire was caused by a faulty furnace, Croydon named the furnace distributor, The Trane Company, and the furnace installer, Lower Bucks Cooling & Heating, as defendants.[1]

On January 31, 1994, after being ruled to do so pursuant to Trane's praecipe, Croydon filed a complaint. Thereafter, Trane filed preliminary objections wherein it claimed that Croydon failed to plead its cause with sufficient specificity and that Trane was, therefore, unable to defend the action. The court granted Trane's objections and, on February 24, 1994, Croydon filed an amended complaint. Therein, Croydon alleged that defendants had failed to properly design, manufacture and/or install the furnace and, additionally, that defendants failed to warn users about the furnace's dangerous propensities. Relief was sought based upon breaches of contract and warranty, negligence and strict liability. Trane again filed preliminary objections asserting that the complaint lacked the necessary specificity to permit it to file a responsive pleading. These second

---

1. Throughout its brief, Croydon repeatedly refers to Trane as the furnace manufacturer rather than the furnace distributor. This is so despite the fact that it is abundantly clear from the record that Croydon knew that a third party, not joined in the present action, actually manufactured the subject equipment. In fact, Croydon admitted as much in open court. *See* R.R. at 187–188a; 315–316a. While Croydon asserts that it is im-

material which designation is used to describe Trane, we do not agree. Croydon claims that its noncompliance with the trial court's discovery orders was caused, in part, by the manufacturer's refusal to provide necessary information about the specifics of the furnace. Therefore, rather than being immaterial, we find it essential to properly identify the parties which manufactured, distributed and installed the equipment.

objections were, however, denied. Trane and Lower Bucks then filed cross-claims against each other.

Shortly thereafter, on April 1, 1994, Trane served its first set of interrogatories upon Croydon, thus initiating the long, circuitous and tortuous discovery battle that culminated over two years later in a court order barring Croydon from introducing any expert testimony at trial against Trane as a sanction for its continual violations of court orders compelling discovery.

Although Croydon answered Trane's initial set of interrogatories, the responses were deemed legally inadequate and, upon motion by Trane, Croydon was ordered to provide more complete answers. Rather than provide full and complete answers to Trane's interrogatories, Croydon sought a hearing on the merits of Trane's motion. Prior to the hearing, which was held on February 24, 1995, the trial court entered two additional orders which required Croydon to comply with Trane's various discovery requests.

At the February 24, 1995, hearing on the merits of Trane's request for more complete answers to its interrogatories and various other discovery requests, Croydon asserted that it was unable to answer Trane's interrogatories because Croydon's experts had not yet completed their investigations and reports. N.T. 2/24/95 at 4; R.R. at 142a. In response, the court made the following statement and order:

> Let me see if I can make this as clear as possible. You filed a lawsuit in 1993. You obviously suffered an injury; your place burned down, so I'm not making in any way light of your lawsuit. But you filed the lawsuit a couple years ago. The defendants are entitled to know what it is you claim they did wrong, and we're going to get to that point real quick now. If this was thirty days after the lawsuit was filed we wouldn't be here. But we're two years after the lawsuit was filed. **I expect experts to be hired and reports to be filed quickly, and I don't mean quickly as in six months, I mean quickly as in sixty days. Because, otherwise, you're going to be staring down the barrel of my order saying file the answers or you're going to be precluded.**

N.T. 2/24/95 at 9; R.R. at 147a (emphasis added).

Following this unambiguous dictate that Croydon respond to Trane's discovery requests and furnish an expert report within sixty days, a full year elapsed during which Croydon failed to comply with the court's Order. Finally, in February of 1996, Trane filed a motion with the court requesting that the court sanction Croydon for its continuous and habitual discovery violations.

On April 25, 1996, fourteen months after the court ordered Croydon to file an expert report within sixty days, a hearing was held relative to Trane's motion for sanctions. At this time, Croydon admitted that it had not furnished Trane with expert reports and claimed that the failure to do so was caused, in part, by vicious infighting among the various privately retained and insurance counsel for Croydon. The court, however, reminded counsel that the court orders had been directed to, and violated by, Croydon and not its numerous attorneys. This argument was, therefore, properly rejected.

At this point, Croydon's counsel gave conflicting explanations as to why Croydon never produced an expert report. Robert A. Stutman, Esquire, the attorney retained on Croydon's behalf by its insurer, argued that Croydon, in fact, was in possession of expert reports that had been prepared some time ago but had never been turned over to Trane. N.T. 4/25/96 at 6–7; R.R. at 309–310a. Further, Attorney Stutman stated that he was at a loss to explain why the prepared reports were not given to Trane. *Id.*

Conversely, Croydon's privately retained counsel, Garland Cherry, Esq., testified that it was "impossible for the plaintiff to produce an expert report against Trane until the plaintiff has more information about the gas furnace which Trane will not give to the plaintiff." N.T. 4/25/96 at 8; R.R. at 311a. The court then questioned Attorney Cherry as to why, during the fourteen months between the court order and the sanction hearing, Croydon had not taken any affirmative steps to compel Trane to produce the alleg-

edly withheld, necessary, information. Attorney Cherry responded that, during the interim, Attorney Stutman was managing the case.

After hearing this testimony, the trial court entered the following order:

> [Croydon] is barred from calling at trial any experts to testify against the Trane Company by virtue of its continuing failure to comply with our February '95 order.

Approximately three weeks thereafter, on May 20, 1996, Trane filed a motion for summary judgment against both Croydon and Lower Bucks. With respect to the causes of action pled by Croydon, Trane argued that it was entitled to judgment as a matter of law because, due to the preclusion order barring Croydon's expert testimony, Croyden could not meet its burden of production at trial. That is, absent expert testimony, Croydon could not establish that Trane either sold a defective product or, indeed, that the furnace was the impetus for the fire. After both Croydon and Lower Bucks filed answers opposing Trane's motion, the court, by order dated July 2, 1996, granted summary judgment in favor of Trane.

On August 14, 1996, Croydon filed a motion for reconsideration with the trial court of both the April, 1996 preclusion Order and the July, 1996 order granting summary judgment. However, due to Croydon's failure to file a praecipe for argument thereon, as required by local rules, the trial court did not address the merits of the reconsideration motion.

In late September of 1996, Croydon and Lower Bucks entered into a full and final release of all claims brought by Croydon as a result of the 1992 fire. In consideration of the release, and without admitting liability, Lower Bucks agreed to pay Croydon $1,000,-000.00.

As a result of this settlement, Croydon's causes of action against both of the original defendants, Trane and Lower Bucks, were ended. Croydon, however, neglected to file a praecipe for discontinuance with the local prothonotary in order to officially terminate its action against Lower Bucks.

Croydon then filed the instant appeal, wherein it alleges that (1) the trial court abused its discretion in determining that preclusion was an appropriate method of sanctioning Croydon for its dilatory conduct; and (2) summary judgment was improvidently granted in light of the outstanding crossclaim of Lower Bucks against Trane.

In addition to arguing that the trial court, after considering the particulars of this case, did not abuse it discretion in precluding Croydon's expert testimony or in granting summary judgment, Trane argues that the present appeal is not properly before this Court and should, therefore, be quashed. The trial court agreed with this position and has not, therefore, addressed the merits of Croydon's claims.

Pursuant to Pa.R.A.P. 341, an appeal must be taken, with certain exceptions not presently applicable, from a final order of a lower tribunal. Further, the Rule provides that a final order is, *inter alia*, an order that "disposes of all claims or of all parties." Pa.R.A.P. 341(b)(1). Both Trane and the trial court argue that, because the July 2, 1996, summary judgment order did not dispose of Croydon's outstanding claims against Lower Bucks, it was not a final, appealable, order. Moreover, because the later settlement agreement between Croydon and Lower Bucks was never docketed, the official record does not reflect the parties' settlement.

We agree that, as a matter of technical application, Croydon's appeal should be quashed as premature; for, according to the official record, Croydon's action against Lower Bucks is still pending. In the interests of judicial economy, however, this Court will "regard as done that which ought to have been done" and address the merits of Croydon's appeal. *Randt v. Abex Corp.*, 448 Pa.Super. 224, 231, 671 A.2d 228, 231 (1996). As this Court recently stated prior to addressing the merits of an appeal in which no judgment was reflected in the certified record,

> [w]ere we to quash an appeal from an order which, except for entry of judgment, is otherwise final, we would expend judicial resources in the decision to quash, one of the parties would inevitably praecipe the

prothonotary to enter judgment, and a subsequent appeal would be permitted to follow.

*Johnston the Florist v. TEDCO Construction*, 441 Pa.Super. 281, 288, 657 A.2d 511, 514 (1995).

Should we quash the instant appeal, Croydon would inevitably praecipe for discontinuance with the prothonotary, thus officially docketing its settlement agreement and release with Lower Bucks. Thereafter, Croydon would again appeal the July 2, 1996, order that is presently before us. While we do not in any way condone Croydon's slipshod procedural tactics and concomitant disregard for our Rules of Appellate Procedure, quashal in the instant matter would result in the needless waste of precious judicial resources. We will, therefore, address the merits of Croydon's appeal.

Initially, Croydon argues that the trial court abused its discretion in granting the pretrial preclusion order barring Croydon from introducing expert testimony against Trane. More particularly, Croydon contends that the court "utterly failed" to consider the relevant substantive factors previously identified by this Court when reviewing appeals of discovery sanctions. A careful application of the relevant factors, Croydon argues, necessitates a finding that the subject sanction was excessive.

■ We note, preliminarily, that, although the sanction in question precluded Croydon from introducing expert testimony, but did not altogether dismiss Croydon's case, we will review the present appeal as if the trial court dismissed Croydon's complaint. This Court recently held that such heightened review is appropriate when scrutinizing an order which is tantamount to dismissal in that it leads to summary judgment being granted against the sanctioned party. *See Stewart v. Rossi*, 452 Pa.Super. 120, 127, 681 A.2d 214, 217 (1996).

■ According to Pa.R.C.P. 4019, a trial court may "make an appropriate order" if a party "fails to make discovery or to obey an order of court respecting discovery." Pa. R.C.P. 4019(a)(1)(viii). The decision whether to sanction a party, and if so the severity of such sanction, is vested in the sound discretion of the trial court. *See, e.g., Christian v. Pennsylvania Financial Responsibility Assigned Claims Plan*, 454 Pa.Super. 512, ——, 686 A.2d 1, 4 (1996); *Grunde v. Huff*, 433 Pa.Super. 94, 101, 639 A.2d 1227, 1230 (1994). Absent a finding that the trial court abused its discretion, this Court will not reverse an order sanctioning a party which the trial court found necessary and proper. *Id.*

■ Since the dismissal of an action is the most severe sanction which a trial court may impose, the court must carefully balance the equities of the particular case and "dismiss only where the violation of the discovery rules is willful and the opposing party has been prejudiced." *Stewart*, 452 Pa.Super. at 125, 681 A.2d at 217. In order to facilitate a trial court in making this determination, this Court has identified several factors which must be weighed by the trial court prior to making its decision. Mindful, of course, that each factor represents a necessary consideration and not a necessary prerequisite, this Court has outlined the following factors:

(1) the nature and severity of the discovery violation;

(2) the defaulting party's willfulness or bad faith;

(3) prejudice to the opposing party;

(4) the ability to cure the prejudice; and

(5) the importance of the precluded evidence in light of the failure to comply.

*Id.*

■ Presently, the prolonged tautology of this case demonstrates that the trial court was faced with a situation in which, after repeated discovery violations, it ordered Croydon to file an expert report within sixty days. Further, the court unambiguously stated that the failure to comply would result in a preclusion order. Nevertheless, Croydon failed to comply with the court's order for over one year. Then, when asked by the court to explain its dilatory behavior, Croydon gave answers which were, at turns, implausible, incredible and irrelevant.

As stated, Croydon's counsel disagreed as to whether an expert report had been generated as of the date of the April, 1996 sanction

hearing. Insurance counsel admitted that a report had been prepared, while private counsel averred that no report presently existed nor could one be prepared absent further cooperation from Trane.

Our review of the record, however, discloses two expert reports prepared on behalf of Croydon. The first such report, submitted by Lawrence J. Dove Associates, is dated February 23, 1995, one day **prior** to the motion hearing and a full fourteen months **prior** to the sanction hearing. R.R. at 469–525a. Thereafter, on August 2, 1996, after summary judgment was entered against Croydon, Bison Engineering, Inc. prepared a second expert report. R.R. at 699–758a.

The existence of these two reports refutes Croydon's present claims. If, in fact, the Dove Report was in the possession of one of Croydon's attorneys prior to the hearings, as its preparation date would seem to indicate, it was Croydon's duty to submit such rather than pit its attorneys against each other in open court, each blaming the other for their client's shameful discovery compliance. Assuming, *arguendo*, that Croydon did not have a report and could not have one prepared absent Trane's cooperation, this does not in any way explain why Croydon waited fourteen months to alert the court that Trane was withholding necessary, discoverable, information. Surely, when a party is facing a threatened sanction itself, and believes that its noncompliance is dictated by the subversive tactics of the opposing party, the proper course of action is to file a motion with the trial court seeking an order directing discovery. Other than stating that another attorney was managing the case during the relevant time period, however, Croydon could not explain why no affirmative action was taken in this regard.

This evidence amply supports a finding that Croydon repeatedly and willfully failed to comply with court orders respecting discovery. If the information was available, Croydon should have furnished it as soon as practicable. Conversely, if Trane withheld necessary information from Croydon, Croydon should have presented a motion to compel discovery to the trial court. Further, Croydon did not attempt to mitigate its

transgressions at the hearing by assuring the court that it would thereafter follow the court's dictates.

In addition to flaunting its disrespect for the court, the record supports the finding that Croydon's actions prejudiced Trane. As stated, Croydon initiated this action in 1993; surely, by the time of the sanction hearing in 1996, Trane had the right to know exactly what behavior it was that Croydon alleged was responsible for the fire. Without being furnished with Croydon's theory of the case, whether that be negligent design, failure to warn, improper installation, or some combination thereof, Trane could not marshall a defense for itself. Instead, Trane was forced to spend years in litigation merely attempting to glean the crux of Croydon's argument.

In sum, we find that the trial court acted within the bounds of its permissible discretion in entering the preclusion Order against Croydon. While this sanction was certainly severe, it was not imposed hastily or without regard for its ramifications. Although Croydon was allotted sixty days to comply with the court order, it saw fit to sit in silence and disobey the unambiguous edict for over one year. Any complaints that Croydon presently aver prohibited it from compliance should properly have been addressed to the trial court at some point during the fourteen month interval between the discovery Order and sanction.

Next, Croydon alleges that the trial court erred in granting Trane's motion for summary judgment because the court's preclusion order was not directed at Lower Bucks and because Lower Bucks had an outstanding crossclaim against Trane. These arguments are flawed in several respects and, accordingly, can afford Croydon no relief.

At the outset, we note that Croydon's averment that there is an outstanding crossclaim of Lower Bucks against Trane is refuted by the record. Trane's May 20, 1996, motion for summary judgment was propounded against both Croydon and Lower Bucks. R.R. at 321a. Both parties filed answers in opposition to Trane's motion and, after considering all of the pleadings, the court granted Trane's motion for summary judgment.

R.R. at 433a; 563a. The fact that Lower Bucks chose not to appeal the adverse ruling cannot lead one to conclude that the order was not entered. Indeed, nothing in the record demonstrates or even suggests that the motion was granted in part and denied in part, and only the type of revisionary rendition of the procedural record which Croydon now employs could support such a finding.

Finally, we find specious Croydon's claim that, because the preclusion order did not involve Lower Bucks, the trial court erred in granting summary judgment in favor of Trane. The focus of this appeal is the propriety of the trial court's order granting summary judgment in favor of Trane and against Croydon. This inquiry must necessarily focus upon the quantum of evidence that Croydon could introduce at trial and whether such evidence would be legally sufficient to support Croydon's *prima facia* case against Trane. It is wholly unnecessary to speculate as to the type or sufficiency of evidence that Croydon could introduce at trial against Lower Bucks or vice versa.

As previously discussed in holding that the instant appeal would not be quashed although it is technically untimely, Croyden's claims against Lower Bucks were undisturbed by the order granting Trane's motion for summary judgment. Several months thereafter, Lower Bucks and Croydon entered into a settlement agreement after which Croydon took the present appeal. Therefore, any averment or implication that the court's actions somehow truncated Croydon's rights with respect to Lower Bucks must necessarily fail.

As to the propriety of the court's order entering summary judgment in favor of Trane and against Croydon, we find no error. When reviewing a trial court's order granting summary judgment, we must view the record in the light most favorable to the adverse party and determine whether the moving party has established that there exists no genuine issue of material fact and that it is, therefore, entitled to judgment as a matter of law. *See, e.g., Skipworth v. Lead Industries, Inc.,* 547 Pa. 224, 230, 690 A.2d 169, 171 (1997); *Kingston Coal Co. v. Felton Mining Co., Inc.,* 456 Pa.Super. 270, 277, 690

A.2d 284, 287 (1997). Because the court's preclusion order barred Croydon from introducing expert testimony against Trane as to the cause of the accident, it is evident that Croydon could not meet its burden of producing sufficient evidence to prove its *prima facia* case at trial. The court, therefore, properly entered summary judgment rather than allowing this case to proceed needlessly through trial.

Order affirmed.

POPOVICH, J., concurs in the result.