# Brotech Corp. v. Delmarva Chemicals Inc.

*Suzanne Schiller, Monica Matthews* and *Paul Rosen,* for plaintiff.

*Jacqueline Promislo,* for defendant.

TERESHKO, *J.,* May 6, 2002—Before the court is the appeal taken by plaintiff, Brotech Corporation (appellant), from an order of the court dated October 31, 2001, granting summary judgment in favor of defendants, Delmarva Chemicals Inc. and GFI Chemicals (appellees).

Briefly, the relevant facts relating to this case are as follows:

Appellant is the manufacturer of cation exchange resins which are used in the water treatment process.[1] Caustic soda is an ingredient used in the manufacture of the resins.[2] Appellee is a supplier of caustic soda.[3] Appellant brought a negligence and breach of contract action against appellee for supplying allegedly contaminated caustic

---

1. Plaintiff's complaint, ¶1.

2. Defendants' motion for summary judgment, exhibit "B," deposition of Joseph D'Alessandro (December 7, 2000), p. 137.

3. Plaintiff's complaint, ¶¶2, 6.

soda that appellant used in manufacturing its resins. Appellant sold the resins to various customers who complained about an odor in the resins and subsequently returned the resins to appellant.[4] As a result, appellant suffered lost profits due to the returned sales, purported to be in excess of four million dollars. This lawsuit was filed in June 1999. Appellant maintains a minimum two-year retention policy on its product samples and customer returns.[5] The resins that are the subject of this litigation were manufactured in 1998; nevertheless, they were destroyed some time after appellant filed its lawsuit in 1999, even though they were significant evidence in the litigation. Thus, appellee was deprived of the opportunity to conduct inspection and testing of the resins to defend appellant's claims.

The court imposed a discovery deadline of March 5, 2001, pursuant to a case management order. Numerous discovery orders were entered against appellant to comply with requests that would assist appellees in the defense of this lawsuit. (See orders of July 26, 2000, September 13, 2000, November 29, 2000, and January 10, 2001).[6] In particular, appellees sought the identity of the batches of resins that were returned by appellant's customers. Appellant responded to this request, "Unknown.

---

4. *Id.,* ¶¶10, 14.

5. Defendants' motion for summary judgment, exhibit "E," deposition of William Fries, pp. 145-46.

6. Three other orders were entered against the plaintiff relating to its obstreperous behavior in failing to produce witnesses for deposition. In fact, plaintiffs were ordered to pay the sum of $2,000 as a sanction by orders dated January 24, 2001, and February 28, 2001.

No records were kept of the returns." [7] In fact, appellant could not identify when the batches were returned or provide a list of customers who received the allegedly tainted batches.[8] Appellant's quality control manager, Joseph D'Alessandro, testified that there was no odor present in the sample retained by appellant.[9] Furthermore, Mr. D'Alessandro testified that he did not recall any of the returned samples being kept.[10]

Trial was scheduled for November 5, 2001. On October 25, 2001, despite the fact that the discovery deadline expired in March 2001, counsel for appellant notified his opponent that samples of the subject resins had finally been located and were available for testing.

On October 31, 2001, this court granted appellees' motion for summary judgment. An appeal of that order was filed on November 29, 2001, and appellant, in its Rule 1925(b) statement of matters complained of on appeal, raises several issues.

Appellant argues that the court erred by granting summary judgment based on spoliation of the evidence because the evidence that was allegedly destroyed was not the defective product that is the subject of the litigation. Appellant further contends that the evidence sought by appellee is in existence and available for testing. Finally, appellant argues that the court's dismissal of its lawsuit,

---

7. *Id.,* exhibit "G," plaintiff's response to defendants' second set of supplemental interrogatories and document requests addressed to plaintiff, no. 2.

8. *Id.,* nos. 3 and 4.

9. Defendants' motion for summary judgment, exhibit "B," dep. of Joseph D'Alessandro (January 29, 2001), p. 260.

10. *Id.,* D'Alessandro dep. (December 7, 2000), p. 106.

for appellant's discovery delays, was too harsh of a sanction based upon the Third Circuit's test for appropriate sanctions in spoliation cases.

The principles governing a motion for summary judgment are well-settled. Summary judgment may be granted when the pleadings, depositions, interrogatory answers, admissions, affidavits, and expert reports, if any, show that there is no genuine issue as to any material fact and that the record entitles the moving party to judgment as a matter of law. Pa.R.C.P. 1035.1 and 1035.2. All doubts as to the existence of a genuine issue as to a material fact must be resolved against the moving party. *Breslin by Breslin v. Ridarelli,* 308 Pa. Super. 179, 454 A.2d 80 (1982). The moving party bears the burden of demonstrating that no genuine issue of material fact exists and that he is entitled to judgment as a matter of law. *Thompson Coal Company v. Pike Coal Company,* 488 Pa. 198, 412 A.2d 466 (1979). In determining whether the moving party has met this burden, the court must examine the record in the light most favorable to the non-moving party, giving that party the benefit of all reasonable inferences. *Elder v. Nationwide Insurance Co.,* 410 Pa. Super. 290, 599 A.2d 996 (1991). Once a motion for summary judgment is made and is properly supported, the non-moving party may not simply rest upon the mere allegations or denials in her pleadings. Pa.R.C.P. 1035.3. The non-moving party must set forth specific facts showing that there is a genuine issue for trial. *Curran v. Children's Service Center of Wyoming County Inc.,* 396 Pa. Super. 29, 578 A.2d 8 (1990). The purpose of Pa.R.C.P. 1035 is "to assure that the motion for summary judgment may 'pierce the pleading' and to require

the opposing party to disclose the facts of his claim . . . ." *Roland v. Kravco Inc.,* 355 Pa. Super. 493, 513 A.2d 1029 (1986). (emphasis omitted)

"A party which reasonably anticipates litigation has an affirmative duty to preserve relevant evidence." *Bowman v. American Medical Systems Inc.,* 1998 WL 721079 (E.D. Pa.), (citing *Baliotis v. McNeil,* 870 F. Supp. 1285, 1290 (M.D. Pa. 1994)). In *Roselli v. General Electric Co.,* 410 Pa. Super. 223, 599 A.2d 685 (1991), the Superior Court held that when a plaintiff voluntarily disposes of the product which he claims is defective, summary judgment in favor of the defendant is appropriate. The *Roselli* court stated:

"To permit claims of defective products where a purchaser of the product has simply thrown it away after an accident, would both encourage false claims and make legitimate defense of valid claims more difficult. It would put a plaintiff (or plaintiff's attorney) in the position of deciding whether the availability of the item would help or hurt his or her case. Where producing the product for defense inspection would weaken rather than strengthen a case, we unfortunately are obliged to conclude that some plaintiffs and attorneys would be unable to resist the temptation to have the product disappear." *Id.* at 228, 687-88 (citing *Martin and Greenspan v. Volkswagan of America,* no. 88-8261, 1989 WL 81296 (E.D. 5 Pa. July 13, 1989)).

In *Troup v. Tri-County Confinement Systems Inc.,* the Superior Court found that "a plaintiff's willful and knowing destruction of evidence is sufficient to warrant sanctions. . . ." 708 A.2d 825, 827 (Pa. Super. 1998). More-

over, "Pennsylvania state and federal cases applying the spoliation of evidence doctrine have consistently granted summary judgment to defendants when the plaintiff was in any way at fault for failing to preserve the defective product." *Dansak v. Cameron Coca-Cola Bottling Company Inc.,* 703 A.2d 489, 493 (Pa. Super. 1997).

Pursuant to Rule 4019 of the Pennsylvania Rules of Civil Procedure, a trial court may "make an appropriate order" if a party "fails to make discovery or to obey an order of the court respecting discovery." Pa.R.C.P. 4019(a)(1)(viii); *Wolloch v. Aiken,* 756 A.2d 5, 13 (Pa. Super. 2000), *reargument denied* (2000). "The decision to sanction a party and the severity of the sanction is a matter vested in the discretion of the trial court." *Id.,* citing *Croydon Plastics v. Lower Bucks Cooling & Heating,* 698 A.2d 625 (Pa. Super. 1997), *appeal denied,* 553 Pa. 689, 717 A.2d 1028 (1998). Where evidence is destroyed, sanctions may be appropriate, including the outright dismissal of claims, the exclusion of countervailing evidence, or a jury instruction on the "spoliation inference." This permits the jury to assume that "the destroyed evidence would have been unfavorable to the position of the offending party." *Schmid v. Milwaukee Elec. Tool Corp.,* 13 F.3d 76, 78 (3d Cir. 1994). In *Schroeder v. PennDOT,* 551 Pa. 243, 251, 710 A.2d 23, 27 (1998), *reargument denied* (1998), the Pennsylvania Supreme Court adopted the test enunciated by the Third Circuit Court of Appeals for deciding the appropriate penalty for spoliation of evidence cases. This test requires the court to examine "(1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) the

availability of a lesser sanction that would protect the opposing party's rights and deter future similar conduct." *Id.*

Here, appellant failed to adhere to its own minimum two-year retention policy for the resin samples and instead attempts to lay blame on appellees for waiting until the litigation was well under way to request the samples. The resin samples were under the exclusive control of appellant and therefore appellant, in order to proceed with its case, was obligated to preserve the samples as evidence. Appellant was not even able to provide the identity of the batches or resins that were returned by its clients. Appellant's verified answer was "Unknown. No records were kept of the returns." See defendant's motion for summary judgment, exhibit "G," plaintiff's verified response to defendants' second set of supplemental interrogatories and document requests addressed to plaintiff, no. 2. Furthermore, plaintiff was unable to produce samples of the specified resins manufactured in 1998 and 1999, stating that the "samples were discarded as part of standard two-year retention policy so they no longer exist except possibly for 1999 that will be produced." See *id.,* no. 27.

Appellant contends that this is not a spoliation issue because the defective product is the caustic soda provided by appellees, rather than the resin samples. This is a silly argument because appellant's entire case rests upon the allegation that its resin product is defective because the caustic soda was defective. Appellant offers no proof that the resin was defective or that the caustic soda was the defective ingredient. Appellant's quality control manager testified that the caustic is only one of a number of

ingredients used in manufacture of the resins. See defendants' motion for summary judgment, exhibit "B," deposition of Joseph D'Alessandro (December 7, 2000), p. 137. As for appellant's assertions now that the evidence sought is in existence and available for testing, such an assertion cannot be found in the record before the court. A letter signed by plaintiff's counsel and attached to its response to a motion for summary judgment does not fall into the category of "pleadings, depositions, interrogatory answers, admissions, affidavits, and expert reports" which comprise the "record" pursuant to Pa.R.C.P. 1035.1. Further, this "11th hour discovery" of the alleged samples becomes highly suspicious in light of the volume of litigation attached to the prior discovery issues.

Moreover, based upon the factors enunciated in *Schroeder,* summary judgment was proper. First, as for the "degree of fault of the party who altered or destroyed the evidence," the samples were at all times in the exclusive custody and control of appellant; no blame can be placed on appellee for destruction of the resin samples. *Schroeder v. PennDOT,* 551 Pa. at 251, 710 A.2d at 27. Next, "the degree of prejudice suffered by the opposing party" is clear: appellees have no ability to defend themselves against the claims since they had no opportunity to have the samples analyzed and tested by an expert who would testify on their behalf. *Id.* And, in light of appellant's assertion, on the eve of trial, that the samples were actually located, appellees are still severely prejudiced by the fact that expert discovery deadlines have long expired. Finally, as to "the availability of a lesser sanction that would protect the opposing party's rights

and deter future similar conduct," the litigation progressed for more than two years, having been initiated in June 1999 and scheduled for trial in November 2001, and without the availability of a defense to appellant's claims, there is no lesser sanction to protect appellees in this instance. *Id.* Four orders were entered against appellant between July 2000 and January 2001, yet appellant failed to act diligently to locate either the alleged defective resin samples or provide complete answers to appellees' discovery requests. Therefore, under the *Schroeder* test, dismissal of appellant's lawsuit was within the discretion of the court. Summary judgment was properly granted.