J-A10022-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| ALFRED VILGOSAS AND LOUITSIA VILGOSAS | : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | : : : : | |
| v. | : : : | |
| | : | No. 1551 EDA 2020 |
| JANSSEN RESEARCH & DEVELOPMENT LLC,  JANSSEN PHARMACEUTICALS INC, JOHNSON AND JOHNSON COMPANY, JANSSEN ORTHO LL, BAYER HEALTHCARE, BAYER HEALTHCARE PHARMACEUTICALS, AND BAYER CORPORATION | : : : : : : : : | |

Appeal from the Order Entered July 15, 2020
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  No. 180800820

BEFORE:   PANELLA, P.J., OLSON, J., and COLINS, J.[*]

MEMORANDUM BY OLSON, J.:                          Filed: November 5, 2021

Appellants, Alfred Vilgosas and Louitsia Vilgosas, appeal from an order

entered on July 15, 2020 in the Civil Division of the Court of Common Pleas of

Philadelphia County that dismissed, with prejudice, Appellants' personal injury

and product liability claims for failure to comply with a case management order

issued by the trial court.  We affirm.

The trial court prepared a cogent summary of the facts and procedural

developments relevant to the substance of this appeal.

---

[*] Retired Senior Judge assigned to the Superior Court.

[Appellants] commenced the instant action on August 10, 2018, alleging, *inter alia*, Alfred Vilgosas suffered personal injuries as the result of his use of the pharmaceutical Xarelto. According to the short-form complaint, Orel Friedman, M.D., prescribed Xarelto to Alfred Vilgosas from June 12, 2013 until May 2014.

In January 2015, the ***In Re Xarelto Products Liability Litigation*** mass tort [class action] was formed. Liaison counsel was appointed to speak on behalf of the various plaintiffs' attorneys and defense attorneys. A master long-form complaint was filed which made allegations common to all plaintiffs in the litigation. Each individual plaintiff then filed a case-specific short-form complaint, which incorporated the master long-form complaint by reference and set forth the factual circumstances unique to that individual plaintiff. As of January 2019, there were nearly 2,000 Xarelto cases pending in Philadelphia, and approximately 25,000 cases pending nationwide.

In March 2019, plaintiffs' liaison counsel negotiated a global settlement whereby the various defendants would pay [$750,000,000.00] to settle all outstanding Xarelto cases nationwide. To assist the parties in effectuating the settlement, [the trial c]ourt issued a series of case management orders on March 25, 2019 setting forth procedures for plaintiffs who chose to participate in the settlement program and imposing certain discovery obligations on those plaintiffs who chose not to participate in the settlement.[1] The operative case management order at issue in this matter is case management order 25 (CMO 25).

[CMO 25] imposed certain discovery requirements on any plaintiff who chose not to participate in the global settlement. Specifically, CMO 25 required any plaintiff not participating in the global settlement to[:] a) serve defendants with a preservation notice statement no later than 45 days after the lifting of the stay entered by CMO 24[;] b) serve defendants with an affidavit of compliance with discovery requirements no later than 45 days after the lifting of the stay entered by CMO 24[;] c) serve a fully

_____

[1] The contents of case management orders 23, 24, and 25, were negotiated by the plaintiffs' liaison counsel and defendants' liaison counsel and were jointly presented to the [trial c]ourt.

complete and verified short form plaintiff fact sheet,[2] the documents and records required by the short form plaintiff fact sheet, and a case-specific expert report no later than sixty days after the conclusion of the settlement program enrollment period[;] and d) serve a fully complete and verified plaintiff profile and consent form, and the documents and records required by the plaintiff profile [and] consent form, no later than [60] days after the conclusion of the settlement program enrollment period. On August 12, 2019, the [trial c]ourt entered case management order 24(a), which partially lifted the stay, and [CMO 25(a)], which set the end date for enrollment in the settlement program as September 4, 2019.

[CMO 25] also set forth the procedure to be followed in the event a plaintiff failed to fully comply with these discovery requirements. Under CMO 25, defendants' liaison counsel would first provide the plaintiff with notice of the deficiency and thirty days in which to cure the deficiency. Any further extensions to respond could only be granted by the [trial c]ourt upon good cause shown. If the plaintiff failed to cure the deficiency within the allotted time, defendants' liaison counsel could alert the [trial c]ourt, at which time the plaintiff would have an additional [30] days in which to show cause why the case should not be dismissed with prejudice for failing to prosecute.

[Appellants] elected not to participate in the settlement program; accordingly, the discovery obligations set forth in CMO 25 applied to [Appellants'] case. Therefore, under CMO 25, [Appellants] were obligated [to] a) serve a preservation notice statement no later than October 9, 2019[;] b) serve an affidavit of compliance no later than October 21, 2019[;] c) serve a fully complete and verified short form plaintiff fact sheet, the documents and records required by the short form plaintiff fact sheet, and a case-specific expert report no later than November 4, 2019[;] and d) serve a fully complete and verified plaintiff profile and consent form and the documents and records required by the plaintiff profile [and] consent form no later than November 4, 2019. [Appellants

_____

[2] Pursuant to case management order 6, "A completed [plaintiff fact sheet] shall be considered to be interrogatory answers and responses to requests for production under the Pennsylvania Rules of Civil Procedure …." *See In Re Xarelto Products Liability Litigation*, January Term 2015, No. 2349, Case Management Order 6, docketed on July 7, 2015, at § B8(a).

produced] none of these documents. On November 5, 2019 and November 7, 2019, [Appellees'] liaison counsel provided notice of these deficiencies to [Appellants'] counsel and provided [30] days in which to cure the deficiencies pursuant to CMO 25 § II(C). [Appellants] failed to cure these deficiencies within the [30] day period provided by CMO 25.

On December 23, 2019, [Appellees] filed a petition for rule to show cause why [Appellants'] case should not be dismissed with prejudice for failure to comply the requirements of CMO 25. The crux of [Appellees' p]etition was that [Appellants] failed to produce any medical records from Dr. Freidman. [Appellants] failed to respond to the petition within the [20] day response period.[3] On January 17, 2020, the [trial c]ourt issued a rule, returnable February 4, 2020, to show cause why this case should not be dismissed with prejudice for failure to comply with CMO 25. The day before the rule was returnable, February 3, 2020, [Appellants] filed a response to the petition for rule to show cause; the response indicated all of the required discovery, except for the case-specific expert report required by CMO 25 § (iv), had been provided to [Appellees]. [Appellants'] counsel made a similar representation to the [trial c]ourt at the February 4th [show cause] hearing. [Appellees'] liaison counsel admitted she received additional documents from [Appellants'] counsel the evening before the hearing; however, due to the late production, [Appellees'] liaison counsel had not yet determined what information, if any, remained outstanding. Accordingly, the [trial c]ourt continued the [show cause] hearing until March 5, 2020.

Between February 4th and March 5th, [Appellees'] counsel informed [Appellants'] counsel that several deficiencies still existed, notably, the absence of records from the prescribing physician, Dr. Freidman. At the hearing on March 5, 2020, [Appellants] argued they substantially complied with the requirements of CMO 25. [Appellees'] liaison counsel again conceded she received additional documents but she could not

---

[3] The [trial c]ourt noted that on Decembers 10, 2019, [Appellants'] counsel filed a motion to withdraw as counsel. The [trial c]ourt scheduled a hearing on [Appellants'] counsel's motion to withdraw on February 4, 2020. At the hearing on the motion to withdraw, [Appellants'] counsel informed the [trial c]ourt that the reason for seeking to withdraw had been resolved and [Appellants'] counsel orally withdrew their motion to withdraw as counsel.

comment on the completeness of the records because they had been produced shortly before the hearing. Accordingly, the [trial c]ourt held the issue under advisement. On March 11, 2020, [Appellees] filed a reply brief indicating that even with the additional documents provided by [Appellants'] counsel in February 2020 and March 2020, [Appellants] still failed to comply with the requirements of CMO 25; specifically, [Appellants] failed to provide 1) [Alfred Vilgosas'] medical records from Dr. Freidman for the time period between June 12, 2013 and May 5, 2014, 2) Alfred Vilgosas' medical records from Nazareth Hospital for the time period between May 5, 2014, and May 13, 2014, and 3) the case-specific expert report. [The trial c]ourt took no action on this matter between March 17, 2020 and May 15, 2020, because the Philadelphia Court of Common Pleas was closed due to the state-wide judicial emergency related to COVID-19.

On June 25, 2020, th[e trial c]ourt ordered [Appellants'] counsel to file a supplemental brief by June 30, 2020 certifying whether [Appellants] had served [Appellees'] counsel with 1) [Alfred Vilgosas'] medical records from Dr. Freidman for the time period between June 12, 2013 and May 5, 2014, 2) Alfred Vilgosas' medical records from Nazareth Hospital for the time period between May 5, 2014 and May 13, 2014, and 3) the case-specific expert report which established a causal link between Alfred Vilgosas' use of Xarelto and [17] claimed injuries. [Appellants'] counsel timely filed a supplemental brief certifying 1) Dr. Freidman's records had been requested and any records received had been turned over to [Appellees], 2) the records from Nazareth Hospital were served upon [Appellees], and 3) [Appellants] served a case-specific expert report of Dr. Seth Feltheimer opining [that Alfred Vilgosas'] use of Xarelto caused him to suffer gastrointestinal bleeding and worsened anemia. [Appellants] further indicated they did not intend to pursue claims related to the [15] other injuries identified in the [trial c]ourt's June 25, 2020 order. On July 3, 2020, [Appellees] filed a supplemental memorandum explaining [Appellees] still had not been provided with [Alfred Vilgosas'] medical records from Dr. Freidman for the time period between June 12, 2013 and May 5, 2014. In light of [Appellants'] repeated failure to provide Dr. Freidman's records, [the trial c]ourt granted [Appellees'] petition on July 14, 2020 and dismissed this case with prejudice for failure to provide the discovery required by CMO 25.

> On August 10, 2020, [Appellants] filed the instant appeal. [Thereafter, the trial court, on August 14, 2020, directed Appellants to file and serve a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellants timely complied, preserving the two claims they raise in their brief to this Court. The trial court issued its Rule 1925(a) opinion on October 9, 2020].

Trial Court Opinion, 10/9/20, at 1-7 (footnotes in original; unnecessary capitalization removed).

Appellants' brief raises two claims for our consideration:

1) Did the trial court commit reversible error when it dismissed [Appellants'] case for failure to comply with CMO 25?

2) Did the trial court erred when it found [Appellants] had not substantially complied with CMO 25?

Appellants' Brief at 2.

Appellants maintain, for several reasons, that dismissal constituted an extreme and inappropriate remedy to redress a "temporary" delay in producing relevant discovery materials. Initially, Appellants stress that they undertook good faith, reasonable efforts to identify and secure Dr. Friedman's medical records and that they produced available documents to Appellees. *See* Appellants' Brief at 13. Appellants also suggest that many medical records subject to disclosure may not exist and they are under no obligation to produce materials they did not receive. *See* Appellants' Brief at 12-13. In addition, Appellants describe their non-compliance with CMO 25 as a "brief period" which resulted from clerical issues attributable to counsel, not from bad faith or indifference toward the court's authority or the need for orderly

administration of discovery within the context of mass tort litigation. *See id.* at 8. Appellants also argue that their conduct did not cause Appellees to suffer prejudice since this case has not been listed for trial, since Appellees may yet pursue alternate methods of discovery, including depositions, to develop their defenses, and since documents already made available to Appellees will inform and/or resolve certain issues. *See id.* at 21 (records produced from Nazareth Hospital will confirm when, why, and how Alfred Vilgosas was treated with Xarelto); *see also id.* at 25 (given prospect of deposing Dr. Friedman, learned intermediary defense remains viable despite missing records); and, *id.* at 26 (no good faith assertion of lack of Xarelto usage will emerge in view of production of pharmacy prescription records). In sum, Appellants contend that, under the attendant circumstances, their substantial compliance with CMO 25 supports reinstatement of their claims and militates against a dismissal order imposed merely as a sanction for delay, particularly where Appellees have not incurred prejudice.

Appellants' claims challenge the entry of a discovery order that dismissed, with prejudice, their personal injury and product liability claims against Appellees. Under such circumstances, the guiding principles we follow in conducting appellate review are both well-settled and exacting. In *Cove Centre, Inc. v. Westhafer Cost., Inc.*, 965 A.2d 259 (Pa. Super. 2009), we observed:

> [The appellant's] questions challenge the trial court's entry of a
> discovery sanction that terminated the underlying litigation. *See*

*Croydon Plastics Co., Inc. v. Lower Bucks Cooling & Heating*, 698 A.2d 625, 629 (Pa. Super. 1997); *Steinfurth v. LaManna*, 590 A.2d 1286, 1288–1289 (Pa. Super. 1991) (recognizing heightened standard of review where discovery sanction imposed is tantamount to dismissal of underlying action). Generally, imposition of sanctions for a party's failure to comply with discovery is subject to the discretion of the trial court as is the severity of the sanctions imposed. *See Reilly v. Ernst & Young, LLP*, 929 A.2d 1193, 1199 (Pa. Super. 2007); *Croydon Plastics Co.*, 698 A.2d at 629. Nevertheless, the court's discretion is not unfettered; "since dismissal is the most severe sanction, it should be imposed only in extreme circumstances, and a trial court is required to balance the equities carefully and dismiss only where the violation of the discovery rules is willful and the opposing party has been prejudiced." *Stewart v. Rossi*, 681 A.2d 214, 217 (Pa. Super. 1996). Consequently, where a discovery sanction either terminates the action directly or would result in its termination by operation of law, the court must consider multiple factors balanced together with the necessity of the sanction. *See id.*, *see also Steinfurth*, 590 A.2d at 1289.

Mindful, of course, that each factor represents a necessary consideration and not a necessary prerequisite, this Court has outlined the following factors:

(1) the nature and severity of the discovery violation;

(2) the defaulting party's willfulness or bad faith;

(3) prejudice to the opposing party;

(4) the ability to cure the prejudice; and

(5) the importance of the precluded evidence in light of the failure to comply.

*Croydon Plastics Co.*, 698 A.2d at 629.

*Cove Centre*, 965 A.2d at 261-262.

The trial court determined that the foregoing factors weighed in favor of dismissing Appellants' claims as a sanction for their failure to comply with

applicable discovery obligations. We review the court's assessments in sequential order.

The trial court found that the nature and severity of Appellants' discovery violation warranted dismissal. *See* Trial Court Opinion, 10/9/20, at 7. In reaching this assessment, the court relied heavily upon the type of claims asserted by Appellants and the nature of the documents they failed to produce. As the court explained:

> Despite the fact that [Appellants] claim Alfred Vilgosas was injured by his use of Xarelto, [Appellants] failed to produce the most important medical records in the case, the records from Dr. Friedman. Dr. Friedman's records are necessary to prove that [] Alfred Vilgosas was, indeed, prescribed Xarelto. Equally important is the fact Dr. Friedman's records lay the foundation to explain why Alfred Vilgosas was prescribed Xarelto, why other similar pharmaceuticals were not utilized, and whether Dr. Friedman conveyed any warnings to [Appellants] concerning the dangers of Xarelto. Without Dr. Friedman's records, [Appellants] cannot establish the fundamental requirement[] of their claims – that Alfred Vilgosas was prescribed Xarelto. Similarly, by failing to produce Dr. Friedman's records, [Appellants] have obstructed [Appellees'] ability to pursue defenses such as the learned intermediary doctrine.

Trial Court Opinion, 10/9/20, at 7-8.

We perceive no abuse of discretion in the trial court's consideration of this factor and Appellants' arguments on appeal do not alter our conclusion. A court's consideration of the nature and severity of a discovery violation generally begins with a determination as to whether the discovery material was directly related to the claims and defense raised in the case. *See Rohm and Hass Co. v. Lin*, 992 A.2d 132, 143 (Pa. Super. 2010), *cert*. *denied*, 565

U.S. 1093 (2011). No one disputes that Dr. Friedman's records detailing his decision to prescribe Xarelto and his treatment of Alfred Vilgosas are highly relevant in adjudicating the claims and defenses raised within the context of this personal injury action. Because complete medical records are critical to the resolution of issues raised by Appellants' claims, the trial court correctly concluded that Appellants' failure to obtain and produce the records impeded Appellees' ability to prepare their defenses. Consequently, the court properly held that this factor weighed in favor of a severe sanction, including dismissal.

Next, the trial court found that Appellants' bad faith and willfulness weighed in favor of dismissal. Here, the trial court noted the prolonged and unexplained nature of Appellants' non-compliance with CMO 25:

> In March 2019, [Appellants] were advised that if they chose not to enroll in the settlement program, which was their absolute right, they should be prepared to prosecute this action; prosecuting this action necessarily entailed producing Dr. Friedman's records. Yet [Appellants] did not produce these records in March 2019. Between September 2019 and March 2020, [Appellants] were given multiple chances, by both [Appellees] and by [the trial court], to produce Dr. Friedman's records, yet they failed to do so. In July 2020, more than fifteen months after CMO 25 was entered, more than ten months after their discovery obligations under CMO 25 ripened, nine months after the first deadline to produce Dr. Friedman's passed, and eight months after [Appellees] filed a [p]etition to have [Appellants'] case dismissed, [Appellants] still had not produced Dr. Friedman's records. This timeline shows that, at the very least, [Appellants] failed to act in good faith with respect to their discovery obligations.

Trial Court Opinion, 10/9/20, at 8.

Again, we are convinced that the trial court acted within its discretion in deciding that willfulness and bad faith played a significant role in Appellants' failure to comply with CMO 25. In prior cases, appellate courts in Pennsylvania have held that dismissal of a claim may constitute an appropriate sanction for repeated or prolonged failures to comply with discovery deadlines, where no adequate explanation has been offered. ***See Rohm and Haas Co.***, 992 A.2d at 147 (entry of default judgment as discovery sanction did not constitute abuse of discretion or legal error where "discovery abuses were willful, numerous, continuing, and in complete disregard of the trial court's orders" and defaulting litigant repeatedly flouted opportunities to comply with discovery obligations, in general, and with specific orders); ***see also Croydon Plastics Co.***, 698 A.2d at 630 (repeated discovery violations, which prejudiced opponent, and failure to comply with discovery order for over one year without adequate explanation for dilatory behaviors supported exclusion of expert testimony in products liability action, which was tantamount to dismissal of action). Appellants' repeated, prolonged, and unexplained failures to produce Dr. Friedman's records demonstrated willful and bad faith non-compliance with the trial court's discovery deadlines.

Appellants do not dispute that they still had not produced Dr. Friedman's records more than nine months after their first production deadline passed and eight months after Appellees filed their petition for sanctions in the form of dismissal. During this period, Appellants had several opportunities to

comply with their discovery obligations; yet, they did not do so. In their brief to this Court, Appellants suggest that clerical errors on the part of counsel resulted in their failure to comply with CMO 25. *See* Appellant's Brief at 8. Appellants, however, do not describe the precise nature of the clerical issues that they encountered, nor do they detail how and why - for nearly a year - administrative errors delayed and defeated their efforts to obtain and produce Dr. Friedman's medical files. Thus, the record supports the trial court's determination that Appellants willfully, and in bad faith, disregarded the court's discovery deadlines and their obligations to produce critical medical records pertinent to the fundamental issues underlying their personal injury claims.

Finally, the trial court concluded that the remaining factors – the degree of prejudice to the opposing party, the ability to cure any prejudice, and the importance of the precluded evidence in light of the defaulting party's failure to comply – weighed heavily in favor of dismissal. *See* Trial Court Order, 10/9/20, at 8. In making this determination, the trial court recalled the critical nature of the unproduced files, the likelihood that nondisclosure would impede Appellees' ability to develop their defenses to Appellants' claims, and the duration of Appellants' noncompliance. Specifically, the trial court observed:

> [T]he records which were not produced are the lynchpin to [Appellants'] case. The failure to provide Dr. Friedman's records effectively negated [Appellees'] ability to pursue defenses such as lack of product usage, or the learned intermediary doctrine. Simply put, [Appellees] in this case cannot prepare a defense without the records establishing when [] Alfred Vilgosas was

prescribed Xarelto, why he was prescribed Xarelto, and what warnings were conveyed to him when he was prescribed Xarelto. [Appellants] had almost two years in which to gather Dr. Friedman's records, and they had over fifteen months to produce Dr. Friedman's records, yet they did not produce Dr. Friedman's records. Thus, it was abundantly clear to [the trial court] that additional time would not result in the production of Dr. Friedman's records.

Trial Court Opinion, 10/9/20, at 9. We concur with the trial court's determination that the final three factors relevant in weighing dismissal as a sanction for a discovery violation augur in support of the trial court's order.

Appellants claim that their failure to produce Dr. Friedman's treatment files was not prejudicial to Appellees because "the medical records currently produced to date provide all of the information that Appellees need to understand why [Alfred] Vilgosas was originally prescribed Xarelto." Appellants' Brief at 21. Appellants assert that the "Plaintiff Profile and Consent Form" and the "Short Form Plaintiff Fact Sheet" required under CMO 25 "provided every detail regarding Appellants' Xarelto use, treatment, and subsequent injury." *Id.* According to Appellants, medical records provided to Appellees from Nazareth Hospital support the disclosures included within the forms mandated under CMO 25 and state "when, why, and how [Alfred] Vilgosas was treated with Xarelto." *Id.* at 22. Appellants also maintain that, since the parties retain the right to conduct pre-trial discovery, Appellees can develop their defenses such as the learned intermediary doctrine through witness depositions, including the examination of treating physicians such as Dr. Friedman. *See* Appellants' Brief at 25. Considering the alternate sources

of Alfred Vilgosas' medical treatment records and the availability of live witness depositions, Appellants assert that "nothing precludes Appellees from preparing for trial or establishing defenses to the allegations in the [c]omplaint related to [Alfred] Vilgosas' use of Xarelto." Appellants' Brief at 21. Hence, Appellants conclude that delayed production of Alfred Vilgosas' medical records and gaps in his treatment files have not prejudiced Appellees.

We are not persuaded that Appellants' production of documents from Nazareth Hospital, or the availability of witness depositions, diminishes the prejudice that resulted from the nondisclosure of critical treatment and prescriber records in this case. The records produced from Nazareth Hospital concern Alfred Vilgosas' treatment when he was hospitalized in May 2014. Those records do not include Dr. Friedman's medical files which naturally would contain a contemporaneous record of more than a years' worth of prior treatment and detail Dr. Friedman's prescribing rationale, the treatment of Alfred Vilgosas' underlying medical conditions that necessitated Xarelto use, the warnings and other communications exchanged between Appellants and Dr. Friedman, and any additional relevant information. As the trial court determined, this information was highly relevant to the issues in dispute and

Appellants' failure to exercise diligence in pursuing and disclosing the materials in a timely manner supports dismissal.[4]

Moreover, a deposition of Dr. Friedman, undertaken without prior review and possession of his treatment records, is no substitute for Appellants' failure to produce critically important medical files in accordance with the disclosure deadlines set out in CMO 25. Dr. Friedman treated Alfred Vilgosas in 2013 and 2014, approximately seven to eight years ago. As Appellees note, the passage of time has substantially reduced the likelihood that Dr. Friedman would recall the details of pertinent medical files, his diagnostic observations relevant to prescribing Xarelto in this case, the course of treatment he pursued with Alfred Vilgosas, and the nature and content of any exchanges he had with his patient, particularly regarding the proper use and potential side effects of Xarelto. **See** Appellees' Brief at 33, *citing* **Rohm and Hass Co. v. Continental Cas. Co.**, 781 A.2d 1172, 1180 (Pa. 2001) (noting that witnesses become unavailable, memories fade, and evidence tends to dissipate with passage of time). We agree with the trial court that Appellants' failure to request, preserve, and produce important treatment and prescriber records in accordance with CMO 25 irrevocably impaired Appellees' ability to

---

[4] Even if, as Appellants suggest in passing, relevant materials no longer exist, Appellants have not verified that pertinent records were not disposed of after this litigation commenced. Under CMO 25, Appellants had a duty to confirm compliance with their discovery obligations, including their duty to serve a notice of preservation upon Appellees. Appellants never fulfilled this duty.

prepare their defenses. Accordingly, under the circumstances, we conclude that dismissal was warranted.

Lastly, we reject Appellants' claim that dismissal was unwarranted under Pa.R.C.P. 126 because they substantially complied with their discovery obligations. Pennsylvania Rule of Civil Procedure 126 provides:

> The rules shall be liberally construed to secure the just, speedy and inexpensive determination of every action or proceeding to which they are applicable. The court at every stage of any such action or proceeding may disregard any error or defect of procedure which does not affect the substantial rights of the parties.

Pa.R.C.P. 126. Our cases recognize that Rule 126's doctrine of substantial compliance affords trial courts latitude to overlook procedural defects that do not prejudice party's rights. *See **Anthony Biddle Contractors, Inc. v. Preet Allied American Street, LP***, 28 A.3d 916, 924 (Pa. Super. 2011).

Here, the trial court determined that the doctrine of substantial compliance did not apply because "[Appellants'] failure to produce Dr. Friedman's records prejudiced [Appellees'] ability to prepare a defense." Trial Court Opinion, 10/9/20, at 9. Given our conclusions regarding Appellants' failure to produce, we concur in the trial court's assessment.

In the alternative, we cannot agree that Appellants substantially complied with the requirements of CMO 25. In fact, the record belies that assertion. Appellants filed their claim on August 10, 2018, alleging, *inter alia*, that Appellees failed to warn Alfred Vilgosas' prescribing physician, Dr. Friedman, about the risks associated with the use of Xarelto. In view of the

- 16 -

claims asserted in Appellants' complaint, the medical records of Dr. Friedman would inevitably form a key source of material evidence in their litigation against Appellees. CMO 25, entered in March 2019, made clear that Appellants needed to produce prescriber records no later than November 4, 2019. Appellants did not produce Dr. Friedman's records in November 2019 and, between November 2019 and June 30, 2020, the record contains no evidence that Appellants requested medical records from Dr. Friedman. Eventually, on June 30, 2020, Appellants' counsel represented to the trial court that Appellants requested and produced records from Dr. Friedman. Our review of the record reveals, however, that Appellants first requested records from Dr. Friedman sometime in early July 2020, when counsel forwarded a request dated June 30, 2020 to the doctor's office. This request was made almost two years after Appellants filed their complaint and seven months after Appellants' duty to produce prescriber records became effective under CMO 25. The trial court entered its dismissal order on July 15, 2020, after Appellants failed to produce Dr. Friedman's medical files. Dr. Friedman's office did not serve its "no records statement" until July 23, 2020. Appellants conceded their failure to comply with CMO 25 and the record refutes any assertion of "substantial compliance." Accordingly, for each of these reasons, Appellants are not entitled to relief.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/5/21